**Esteban AREVALO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–94–00088–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 29, 1996.

Discretionary Review Refused
May 29, 1996.

Kim Richardson, Freeport, for Appellant.

Jim Mapel, Brazoria, Mary P. Cudd, Angleton, for Appellee.

Before OLIVER–PARROTT, C.J., and O'CONNOR and TAFT, JJ.

**OPINION**

TAFT, Justice.

Appellant was indicted for two counts of aggravated sexual assault under former TEX. PENAL CODE ANN. § 22.021.[1] A jury convicted him of the charged offense on count two and of the lesser included offense of sexual

---

**1.** The version of section 22.021 in effect at the time of the offense was: Act of June 18, 1987, 70th Leg., R.S., ch. 573, sec. 1, 1987 Tex.Gen. Laws 2275, 2275; *as amended by* Act of August 3, 1987, 70th Leg., 2d C.S., ch. 16, sec. 1, 1987 Tex.Gen.Laws 80, 80.

assault on count one.[2] The court found the enhancement paragraph alleging a prior conviction for aggravated rape true, and assessed appellant's punishment at 75 years in prison on each count. Of his five points of error, the paramount issue concerns whether the trial court erred by submitting the lesser included offense of sexual assault to the jury on each count over the objection of appellant. We affirm.

### Facts

On October 7, 1987, appellant and the complainant met for the first time at the Starlight Lounge in Pearland. The complainant was playing pool with a friend, and appellant came and put quarters on the table, to challenge the winner. Appellant and the complainant played one game of pool; he then invited her outside to his niece's husband's truck (which appellant had borrowed for the evening), to smoke marijuana. When they got in the truck, he said he had to go to his apartment to get the marijuana, started up, and drove off with the complainant to Alvin. She went with him voluntarily—even though, as she later testified, she had "second thoughts" along the way.

When they got inside appellant's apartment, the complainant sat on the couch. Appellant laid an open pocket knife and a pair of pliers on the coffee table in front of her; she thought that was "real strange." Appellant then went into the bathroom for about five minutes and, when he returned, he had a different attitude. He was "acting kind of crazy" and said he wanted her. Appellant came over to where she was sitting, and started pushing her down on the couch. When she told him no, he grabbed her hair, and picked up the knife. He started making stabbing motions between her legs, and as she kept jumping around trying to get out of the way and push him off, he kept stabbing the couch. He told her, "You better be good or I'll stuff you in a trash dumpster. It don't matter to me." He started forcibly pulling off her clothes, and hitting her. Appellant got her over to the bed—sometimes pushing

or hitting, sometimes pulling her by her hair, sometimes holding the knife to her throat—continuously repeating his threat that she "better be good." He threw her onto the bed, and finished pulling off her clothes. Appellant then put down the knife for only a few seconds while he took off his own clothes.

As the struggle continued, appellant got on top of the complainant, and managed to penetrate her briefly. He then pulled her up by the hair, leaned her against the wall, and forced her to suck his penis. To try to create an opportunity to get away, she told him, "You don't have to force me. I'll do this." He then relaxed somewhat, and laid down on the bed, while she continued to perform fellatio. He still held her hair, and kept the knife in his other hand, but no longer held it at her throat. When she was confident she had him off-guard, she bit him, and ran straight out the front door, completely naked. He called after her, "What about your clothes?" She just kept on running, and then hid in a nearby ditch under some weeds. Appellant drove by, but she stayed there about 15 minutes to make sure he was not coming back. She then ran for help.

At a nearby house, the complainant asked for clothes and to call her grandmother. The homeowner gave her a robe and, despite her request not to do so, called the police, who arrived within five minutes. They took her to the police station, and then back to the apartment complex, to look for appellant. They did not find him, but the complainant identified the truck, and her bra inside, on the floor. They then took her back to the station to give a statement. The police asked her, repeatedly, to go to a Galveston hospital for a rape kit examination. She refused; as she later testified, "I didn't want people probing on me anymore, sticking stuff up me. I just wanted to go home." Meanwhile, her friends back at the Starlight Lounge had become worried, and started listening on a police scanner. They heard her name, and

---

**2.** Former Tex.Penal Code Ann. § 22.011, the version in effect at the time of the offense was: Act of June 19, 1983, 68th Leg., R.S., ch. 977, sec. 3, 1983 Tex.Gen.Laws 5311, 5312; *as amended by* Act of June 12, 1985, 69th Leg., R.S., ch. 557, sec. 1, 1985 Tex.Gen.Laws 2159, 2159; Act of June 19, 1987, 70th Leg., R.S., ch. 1029, sec. 1, 1987 Tex.Gen.Laws 3474, 3474.

one of them came to the station and picked her up.

The police obtained a warrant for appellant's arrest two days later, and began an investigation. They gathered and preserved physical evidence, including complainant's shirt, shoes, shorts, bra, purse, and the knife used in the assault. As the expiration of the applicable five-year statute of limitations approached, an indictment was filed on July 17, 1992. The Texas investigation did not produce an arrest, however; instead, law enforcement officers in Pinellas County, Florida, arrested appellant, in November 1992, on a different charge. Meanwhile, the Alvin Police Department had obtained permission from a judge to destroy the physical evidence they held. They disposed of the shirt on February 27, 1992. The shoes, shorts, bra, and knife were destroyed on February 9, 1993. Appellant was extradited to Texas and held in custody beginning on or about February 26, 1993, until his trial and conviction in November of that year.

### Jury Charge on Lesser Included Offense

■ In point of error three, appellant contends that the trial court erred by submitting the lesser included offense of sexual assault to the jury on each count of the indictment. Appellant had objected that because no evidence negated the aggravating factor, appellant's use of a knife, the lesser offense was not raised. Appellant's position at trial, and on appeal, is that the submission of the lesser included offense prejudiced appellant by allowing the jury to arrive at a compromise verdict.

In *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App.1981) (op. on reh'g), a plurality of the Court of Criminal Appeals set out the two-pronged analysis for determining when a charge on a lesser included offense is required: "First, the lesser included offense must be included within the proof necessary to establish the offense charged. Secondly, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense." A majority of the court adopted the *Royster* test in *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Crim.App. 1985).

The *Royster* test arose at a time when the State had no right to appeal. It applied to the question before the *Royster* court— namely, whether there was error when (1) the *defense requested*, and (2) the *trial court refused*, a charge on a lesser included offense. *Royster* did not speak to whether there is error when (1) the *State requests*, and/or (2) the *trial court grants*, a charge on a lesser included offense. The situation presented in this case—i.e., that, over the defendant's objection that there was no evidence that if the defendant is guilty, he is guilty of only the lesser offense, the State requested, *and* the trial court granted, a charge on a lesser included offense—first arose in *Doss v. State*, 636 S.W.2d 564 (Tex.App.—Waco 1982, pet. ref'd).

In *Doss*, the State took the position that *Royster* applies *only* to a *defendant's* request for a charge on a lesser included offense. 636 S.W.2d at 565. The State cited no direct authority for that contention, but based on indirect authority the Waco court declared an inclination to agree with the State, because the State carried both the burden of proof and the obligation to seek a conviction where the evidence warrants it, and the State was not limited to the offense alleged in the indictment, but could convict an accused of any lesser included offense. *Id.* at 565–66. Because—as the *Doss* court determined—there was some evidence that if the defendant is guilty, he is guilty of only the lesser offense, however, the resolution of the question whether such evidence was required did not affect the disposition of the case, and was therefore unnecessary to the decision.

Since *Doss*, the same situation has been addressed in several cases, including *Pennington v. State*, 644 S.W.2d 64, 67 (Tex. App.—Austin 1982), *aff'd on other grounds*, 697 S.W.2d 387 (Tex.Crim.App.1985); *Angel v. State*, 694 S.W.2d 164, 169 (Tex.App.— Houston [14th Dist.] 1985), *aff'd on other grounds*, 740 S.W.2d 727 (Tex.Crim.App. 1987); *Gottlich v. State*, 822 S.W.2d 734, 738 (Tex.App.—Fort Worth 1992, pet. ref'd); *Richardson v. State*, 832 S.W.2d 168 (Tex. App.—Waco 1992, pet. ref'd); *Locke v. State*, 860 S.W.2d 494 (Tex.App.—Waco 1993, pet. ref'd). As in *Doss*, however, the courts in

*Pennington, Angel, Richardson,* and *Locke* each determined there was some evidence that if the defendant is guilty, he is guilty of only the lesser offense. Accordingly, none of those cases genuinely required the respective appellate courts to resolve the question of whether, on defendant's proper objection, the absence of such evidence required the trial court to refuse a charge the State requested on the lesser offense; the question did not affect the ultimate disposition. The same cannot be said with such certainty with respect to *Gottlich,* in the middle of the sequence, but only because there the court of appeals summarily invoked *Doss* and *Angel* without expressly considering the grounds of decision, as we have here. The *Gottlich* court therefore made no determination either way concerning whether there was some evidence that if the defendant was guilty, he was guilty of only the lesser offense. Accordingly, although the *Gottlich* court did not determine that there *was* some such evidence, neither did it determine that there was an *absence of* such evidence. We are aware of no case which has held that a trial court erred in granting the State's request for the submission of a lesser included offense.

Contrary to any second thoughts the Waco Court of Appeals had about *Doss* in its *Richardson* decision,[3] we believe that there is a valid reason for allowing the State to request a jury charge on a lesser included offense without satisfying the *Royster* test.

▆ When the State alleges an offense, it also alleges, albeit implicitly, all lesser offenses included within that offense. Thus, when the State wants to proceed on a lesser included offense, it is unnecessary to seek a new indictment. The State may elect to proceed on a lesser included offense under an indictment alleging the greater offense. Admittedly, direct authority for this proposition is difficult to find because it is unlikely that a defendant would appeal from the State's election to proceed against him on a lesser included offense, after receiving such a benefit. There is at least one example of such an appeal, however.

In *Clardy v. State,* 436 S.W.2d 535 (Tex. Crim.App.1968), the defendant was charged with murder with malice, a capital felony. The State filed written notice it would not seek the death penalty and the defendant waived his right to a jury trial and pled guilty to the court, which assessed 30 years confinement. The defendant then appealed based on a lack of jurisdiction of the trial court to proceed on an indictment charging a capital felony without affording the accused a trial by jury.[4] *Id.* at 535–36. The Court of Criminal Appeals reasoned that the State's notice of intent not to seek the death penalty "in effect reduced [the capital offense] to a non-capital case." *Id.* at 536.

▆ Where the State alleges an offense, along with all of its lesser included offenses, in an indictment, it is axiomatic that the State can elect to submit all or any combination of the alleged offenses to the jury in the jury charge.[5] The only limitation is that the jury can only convict the accused of one offense. *See Meeks v. State,* 653 S.W.2d 6, 11 n. 4 (Tex.Crim.App.1983) (pointing out the one limitation on application of the rule that two or more offenses may be joined in a single indictment: the jury must be instructed that conviction may be had on only one of them). It logically follows, from the premise that the allegation of an offense includes the implicit allegation of all lesser included of-

---

3. In *Richardson,* the court held that where the accused had not objected to submission of the lesser included offense at trial, he was estopped from complaining on appeal. 832 S.W.2d at 171. In an alternative holding, unnecessary to the court's decision, the court revisited *Doss.* Noting that *Gottlich* and *Angel* had relied upon *Doss,* the *Richardson* court stated that it could not see, as had the *Doss* court, a distinction based on whether the State or the defendant requested the charge on a lesser included offense. *Id.*

4. At the time, article 1.14 of the Texas Code of Criminal Procedure provided that a defendant could not waive his right to a trial by jury in a capital felony case. *Id.* at 536.

5. The axiom follows from the premises that the State is entitled to submit to the jury every allegation it proves and that when the State proves the greater alleged offense, by definition it proves all lesser *included* offenses. Of course, the State may abandon some of its allegations and elect not to have them submitted to the jury.

fenses, that the State can submit to the jury any combination of the alleged offense and its lesser included offenses even where the State has not explicitly alleged all lesser included offenses.

Therefore, we hold that the State can request lesser included offenses to be submitted in the jury charge without satisfying the *Royster* requirement that there be some evidence that the accused is guilty only of the lesser offense.[6]

Accordingly, we overrule point of error three.

The discussion of the remaining points of error does not meet the criteria for publication; thus, we order that it not be published. Tex.R.App.P. 90.

We affirm the judgment of the trial court.

---

**6.** We note that there is no prohibition against a trial court submitting any lesser included offenses requested by the defendant. *Royster* merely provides that a trial court may not refuse any defense request for a jury instruction on a lesser included offense when the two-prong test is met.