**Quanell X Abdul FARRAKHAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–04–01205–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 30, 2006.

Discretionary Review Granted May 2, 2007.

126

Stanley G. Schneider, Schneider & McKinney, P.C., Houston, TX, for Appellant.

Kevin P. Keating, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

TIM TAFT, Justice.

A jury convicted appellant, Quanell X Abdul Farrakhan, of the misdemeanor offense of "fleeing or attempting to elude a police officer." *See* TEX. TRANSP. CODE ANN. § 545.421 (Vernon 1999). The trial court assessed punishment at 180 days in jail, suspended for 180 days of community supervision, and a $300 fine. We determine (1) whether the evidence is legally sufficient to support the conviction; (2) whether appellant's due process rights were violated by the State's alleged use of perjured testimony before the grand jury; and (3) whether the trial court erred in charging the jury on the lesser-included offense of which appellant was convicted.

We reverse the judgment and remand the cause with instructions for the trial court to dismiss the indictment.

## I. Background

On June 9, 2002, Derrick Forney shot a Houston Police Department ("HPD") officer. HPD searched for Forney, but to no avail. Detective Abbondandolo, of HPD's homicide division, was the lead detective on the case.

The night of June 10, 2004, appellant, a community activist who had assisted HPD with suspects' peaceful surrender at least 15 times in the past, contacted Jeff McShan, a local television reporter, and HPD to advise that Forney had asked appellant to assist in Forney's surrender. To accomplish Forney's surrender, appellant asked for and was granted permission to deliver Forney to HPD's Travis Street headquarters in downtown Houston that evening. The arranged procedure was consistent with how appellant and the HPD chief's office had handled surrenders facilitated by appellant in the past. This procedure had been put in place by the prior chief of police and had continued afterwards, although it had never been written down.

Forney later became "spooked" and would not allow appellant to deliver him to HPD that evening, but appellant advised HPD that he would try again the next morning. The next morning, McShan contacted Detective Abbondandolo to advise that HPD should send officers to the intersection of Bissonnet Street and Beltway 8 in Houston. Detective Abbondandolo drove to the intersection in an unmarked vehicle, with eight officers in four unmarked police vehicles joining him. When the detectives arrived, they saw appellant's black Hummer. McShan then called De-tective Abbondandolo to advise that appellant and Forney were in the Hummer and that appellant would drive Forney to the Travis headquarters. McShan believed that the June 10 "deal" between appellant and HPD for appellant to deliver Forney to the Travis headquarters was still in place that morning, and he urged Detective Abbondandolo to honor it. Detective Abbondandolo decided that he and the officers who had accompanied him would "just follow behind" to ensure that appellant drove Forney to the Travis headquarters.

Appellant first drove along routes that were consistent with a downtown destination. However, the officers "became concerned" when appellant began taking routes that appeared to lead away from the downtown area. Then, when appellant headed away from downtown and into a residential neighborhood in which acquaintances of Forney's were known to reside, the detective became "very" concerned and felt that the officers "no longer had control of what was going on." Accordingly, Detective Abbondandolo "got on the radio and asked for patrol units to start coming toward our location" and also asked the officers who had accompanied him "to start coming in our direction to assist in this arrest." The detective did so because he feared that Forney had either changed his mind or that he was forcing appellant to drive against appellant's will.

Right then, appellant made an abrupt u-turn over a concrete median and headed in the opposite direction, going west toward the route to the Travis headquarters. Detective Abbondandolo turned around and began following appellant. By coincidence, and not in response to Detective Abbondandolo's call for the assistance of marked patrol units, HPD Officer Keith Roi[1] was driving eastward and came into

---

1. This officer's last name was actually "Roy," not "Roi"; however, we employ the spelling

view of Detective Abbondandolo's westward-bound car.[2] Officer Roi saw Detective Abbondandolo's partner signal him to stop appellant's vehicle. Officer Roi complied by turning around and following appellant, turning on his lights, and activating his siren "several times."

Appellant did not stop, although there were several places in which he could have. Instead, appellant continued driving in the general direction of downtown, which Detective Abbondandolo interpreted to mean that appellant was again heading to the Travis headquarters, and eventually entered the freeway. Appellant did not exceed the speed limit or drive erratically, and he had the flashers on for at least some of the time.[3] Appellant also did nothing "to avoid [Officer Roi's] following him." However, appellant accelerated when Officer Roi turned behind him onto the freeway access road, and appellant committed two traffic violations while Officer Roi was following him.[4]

While Officer Roi was following appellant, appellant tried to call HPD's police chief. The chief was out of the office, so appellant's call was routed to HPD Executive Assistant Chief Charles McClelland, the acting chief. Appellant, who was very excited, told McClelland that he was trying to bring in Forney, but that "trigger happy killer cops" were "all over him" and were "going to create an incident." Appellant also told McClelland that "this was not part of the deal." Although he was aware that appellant was to bring Forney to the Travis headquarters that morning, McClelland did not know what was happening on the ground except for what appellant told him—which did not include any mention that appellant had u-turned over a median, had twice violated traffic laws while Officer Roi was following him, and had recently driven away from downtown into an area in which Forney's friends were believed to live.[5] McClelland also denied knowing of a plan or protocol concerning how the suspect was to be brought in, what route he would take, and in what vehicle he would be transported.

McClelland feared that "something [was] going terribly wrong" and was concerned that Forney might instigate a stand-off, create a hostage situation, or cause someone to be harmed. Accordingly, although he did not tell appellant to disregard the police at the scene, McClelland told appellant that McClelland "would find out what officers were following him and give them instructions to allow him to peacefully surrender at the [Travis headquarters]," as long as appellant was en route to the headquarters. Another officer testified that McClelland told him that McClelland had instructed appellant to slow down and "to keep coming." McClelland never expressly told appellant to stop or to pull over, although he could hear a continuous

"Roi" because the parties and the reporter's record do so.

2. Detective Abbondandolo mistakenly thought that he was in radio contact with Officer Roi. Officer Roi, however, was using a different radio frequency from that used by the detective.

3. The evidence conflicted as to whether appellant had his flashers on before Officer Roi's involvement, or whether HPD Executive Assistant Chief Charles McClelland, whose testi-

mony is discussed further below, told appellant to put on his flashers after Officer Roi's involvement, as part of McClelland's instructions to continue to the Travis headquarters.

4. Appellant ran a red light and failed to turn in a mandatory turn lane.

5. McClelland testified that, when he later learned of all of the circumstances involved, he concluded that the officers on the scene had handled the situation appropriately.

siren in the background during appellant's call.

McClelland quickly began trying to learn who the officers on the ground were, but those officers stopped appellant before McClelland could contact them. Forney was arrested without incident. Appellant was also eventually arrested for evading arrest or detention.

Appellant was indicted for the state felony offense of evading detention by use of a motor vehicle. *See* TEX. PEN.CODE ANN. § 38.04(a), (b)(1) (Vernon 2003). Over appellant's objection, the trial court also charged the jury on the lesser-included, misdemeanor offense of fleeing or attempting to elude a police officer. *See* TEX. TRANSP. CODE ANN. § 545.421(a). At appellant's request, the court charged the jury on the defense of mistake of fact—specifically, that appellant reasonably believed that he had permission to proceed despite Officer Roi's signals to stop. The jury implicitly acquitted appellant of the greater offense of evading detention and convicted him of the lesser offense of fleeing or attempting to elude a police officer.

## II. Sufficiency of the Evidence

In his first issue, appellant argues that the evidence was legally insufficient to support his conviction for the offense of fleeing or attempting to elude a police officer. In reviewing a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim. App.2000).

### A. The Law

A person commits the offense of fleeing or attempting to elude a police officer if he "operates a motor vehicle and wilfully fails or refuses to bring the vehicle to a stop or flees, or attempts to elude, a pursuing police vehicle when given a visual or audible signal to bring the vehicle to a stop." TEX. TRANSP. CODE ANN. § 545.421(a). The offense of fleeing or attempting to elude a police officer is worded in the disjunctive: one commits the offense if one (1) "wilfully fails or refuses to bring the vehicle to a stop ... when given a visual or audible signal to bring the vehicle to a stop" *or* if one (2) "wilfully ... flees, or attempts to elude, a pursuing police vehicle when given a visual or audible signal to bring the vehicle to a stop." *Id.* The jury was charged to find appellant guilty if he committed the offense by either of these two means.

The jury was also charged on, and implicitly rejected, the defense of mistake of fact, which is statutorily defined as follows:

(a) It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense.

(b) Although an actor's mistake of fact may constitute a defense to the offense charged, he may nevertheless be convicted of any lesser included offense of which he would be guilty if the fact were as he believed.

TEX. PEN.CODE ANN. § 8.02 (Vernon 2003). The jury was charged that this defense could negate the culpable mental state of either offense.

### B. Discussion

 Appellant argues that the evidence is legally insufficient to support the following elements of the offense: (1) wilfulness and (2) his failure or refusal to stop the vehicle or his flight or attempt to elude the officer. The crux of appellant's argument is that he could not have been eluding or

fleeing, or have acted wilfully in any way, if the officers involved knew from the beginning that he was proceeding to the downtown Travis headquarters, as he had done several times in the past.

Appellant's argument fails to take into account the evidence, viewed in the required light, that appellant deviated from a route that would have taken him downtown and, in fact, headed away from downtown into an area believed to house Forney's acquaintances before any officer attempted to stop him. When appellant deviated, Detective Abbondandolo became very concerned, felt that the officers no longer had control of the situation, and even feared that Forney might have taken appellant hostage. Once appellant deviated, the officers no longer knew, at least until appellant changed his course, that appellant was heading to the Travis headquarters. And even when appellant was again heading downtown, he drove over a median to do so and committed two traffic offenses—each of which would have independently allowed appellant to be stopped—while being pursued by a marked police car.

Furthermore, viewed in the appropriate light, McClelland's testimony was that he did not tell appellant to disobey the officers at the scene and that he said merely that he would try to reach the officers to instruct them to allow appellant to proceed to headquarters. McClelland also testified that appellant had failed to relate to him information important to McClelland's decision on how to handle the situation, including that appellant had deviated from a direct route and had headed into a neighborhood in which Forney's acquaintances were believed to reside, had made an abrupt u-turn over a median to head in the opposite direction from the officers who had been following him, and had committed two traffic offenses after that. Once

he knew all the facts, McClellan agreed that the officers on the scene had acted appropriately.

It was undisputed that appellant failed to stop his Hummer while being pursued by a marked police vehicle after having been signaled to stop. Given the context set out above, we hold that a rational jury could have concluded beyond a reasonable doubt that appellant wilfully failed to stop after having been signaled to do so and that any belief by appellant that he had McClellan's permission to proceed would not have been reasonable because (1) appellant had deviated from a route to downtown and instead headed toward an area in which Forney's acquaintances were believed to reside, (2) he had committed two independent traffic offenses, and (3) he had not divulged all relevant facts to McClellan so that McClellan could make an informed decision as to whether to allow appellant to proceed.

We overrule appellant's first issue.

### III. Due Process

■ In his fourth issue, appellant asks us to determine that "[his] right to due process was abrogated by the State's use of perjured testimony before the grand jury that returned the indictment." Specifically, appellant asserts that McClelland perjured himself, with the State's knowledge, at the grand-jury proceedings by testifying in supposed contradiction of testimony that he had given on two prior occasions: in an affidavit and at an examining trial.

■ Appellant moved pretrial to dismiss the indictment because of the State's alleged suborning of perjury at the grand-jury proceedings. The trial court denied the motion. Appellant moved for new trial on the same ground. The trial court denied that motion, as well. We review the

denial of a motion to dismiss an indictment under a hybrid standard of review: determinations of historical fact are reviewed for an abuse of discretion, while the application of those facts to the law and questions of law are reviewed *de novo*. *See State v. Moff,* 154 S.W.3d 599, 601 (Tex. Crim.App.2004) (importing standard from *Guzman v. State,* 955 S.W.2d 85 (Tex. Crim.App.1997), into review of ruling on motion to quash indictment, although employing only de novo standard of review in that case because determination did not depend on witness credibility or demeanor). We review the denial of a motion for new trial for abuse of discretion. *See Holden v. State,* 201 S.W.3d 761, 763 (Tex. Crim.App.2006).

■ "Perjury is committed by making a deliberate and willful false statement under oath." *In re Davila,* 631 S.W.2d 723, 725 (Tex.1982); *see* TEX. PEN.CODE ANN. § 37.02(a)(1) (Vernon 2003) ("A person commits [the offense of perjury] if, with intent to deceive and with knowledge of the statement's meaning: he makes a false statement under oath...."). "The branding of any person with a charge of perjury should not be taken lightly." *In re Davila,* 631 S.W.2d at 725.

Appellant asserts that McClelland perjured himself, with the State's knowledge, at the grand-jury proceedings by testifying that (1) he never told appellant that McClelland would have the officers following him "escort [appellant]" to the Travis headquarters; (2) McClelland had "no authority to give escort of convenience"; and (3) McClelland had "no authority to prohibit the officers from arresting [appellant] for any violation of the law that he may or may not have committed, but [McClelland's] authority lies over their discretion." Appellant also complains of the following testimony:

Grand Juror: [T]heir defense has given us something to read here. It says, "Assistant Chief McClelland told Minister Quannel X that he would get the officers to assist him to get to [the Travis headquarters]." You're saying that simply is not true.

A: No, that's their words ... and not mine.

Appellant argues that the cited grand-jury testimony was contradicted by testimony that McClelland gave two other times: in an affidavit and at an examining trial. As for the former, appellant notes that, in the affidavit, McClelland averred that he had told appellant that McClelland would "find out what officers were following him and give them instructions to allow him to peacefully surrender," among related things. As for the latter, appellant relies on the following examining-trial testimony of McClelland:

Q: Would it be inappropriate for you to contact officers to tell them to assist someone to safely come in, to escort them?

A: Would it be inappropriate?

Q: Yes sir.

A: No. That is within my authority to have control, of, you know, of officers['] discretion in that manner.

* * *

Q: Do you recall ever telling [appellant] that officers would assist him in coming in or something that amounted to that, and not use the word "escort"?

A: Yes, because escort has a different connotation in the [HPD].

Q: But did you make him aware that he would, he would have assistance even coming in?

A: That's what I was going to try to do.

McClellan's complained-of statements are not so contradictory or inconsistent as to amount to perjury as a matter of law. For example, McClelland's grand-jury testimony that he did not tell appellant that he would be "escorted" does not necessarily contradict his other cited testimony—in which he testified that he told appellant that he would instruct the officers to allow appellant to come downtown peacefully or with assistance—because McClelland also testified that "escort" had a particular meaning in HPD parlance. Likewise, in McClelland's examining-trial testimony that he had authority to "control ... officers['] discretion in *that manner* [sic]," the pronoun "that" could have referred either to the verb "escort" or to the verb "assist," both of which had been used in the question. (Emphasis added.) Only the former antecedent might conceivably have been inconsistent with McClelland's grand-jury testimony that he had no authority to order "escort[s] of convenience"; the latter antecedent would not have been inconsistent. Furthermore, when asked by a grand juror whether appellant's claim that McClelland had pledged to "get the officers to assist [appellant] to get to [the Travis headquarters]" was true, McClelland did not unequivocally deny the statement, but instead replied, "No, that's their words ... and not mine." In any event, in his affidavit and at the examining trial, McClelland said both that he intended to get appellant "*assistance* [in] coming in" and that he "would ... give [the officers at the scene] instructions *to allow appellant to peacefully surrender.*" (Emphasis added.) Accordingly, McClelland's rejection before the grand jury of appellant's use of the term "assist" is consistent with at least some of his other testimony.

Given these circumstances, we decline to hold that the trial court erred if it implicitly concluded that McClelland did not commit perjury. If the court concluded that no perjury had occurred, then it also did not err in implicitly concluding that the State had not suborned perjury. Accordingly, we hold that the trial court did not err in denying appellant's motions to dismiss and his motion for new trial.

We overrule appellant's fourth issue.

## IV. Lesser–Included Offense

In his third issue, appellant contends that the trial court erred when it charged the jury, at the State's request and over his objection, on the lesser-included offense of fleeing or attempting to elude a police officer.

### A. Comparison of the Offenses

Pursuant to the allegations here, a person commits the state jail felony of evading arrest or detention when he "intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him" and "the actor uses a vehicle while the actor is in flight" without having previously been convicted of the offense. TEX. PEN.CODE ANN. § 38.04(a), (b)(1). A person commits the Class B misdemeanor of fleeing or attempting to elude a police officer when "the person operates a motor vehicle and wilfully fails or refuses to bring the vehicle to a stop or flees, or attempts to elude, a pursuing police vehicle when given a visual or audible signal to bring the vehicle to a stop." TEX. TRANSP. CODE ANN. § 545.421(a). The officer's signal may be by hand, voice, emergency light, or siren, and the signaling officer must be uniformed, prominently displaying his badge, and driving a vehicle that is appropriately marked as an official police vehicle. *Id.* § 545.421(b). The elements of the two offenses are compared in the chart below:

| Alleged Lesser Offense:<br><br>**Fleeing or Attempting to Elude a Police Officer (§ 545.421(a), (b))** | Alleged Greater Offense:<br><br>**Evading Arrest or Detention (§ 38.04(a), (b)(1))** |
|---|---|
| 1. defendant operates a motor vehicle | 1. defendant uses a motor vehicle |

| 2. | defendant has a wilful state of mind | 2. | defendant has an intentional state of mind |
|---|---|---|---|
| 3. | defendant fails or refuses to stop the vehicle<br>*or*<br>defendant flees or attempts to elude | 3. | defendant flees |
| 4. | defendant does #3 while a police vehicle is pursing him | | — |
| | — | 4. | defendant knows that the person from whom he flees is a peace officer |
| | — | 5. | defendant knows that that officer is attempting lawfully to arrest or to detain him |
| 5. | defendant does #3 after having been given visual or audible signal to stop vehicle | | — |
| 6. | officer must be uniformed and be prominently displaying badge | | — |
| 7. | officer's vehicle must be appropriately marked as an official police vehicle | | — |

## B. *Walker v. State*

Our sister court of appeals has held, under the first prong of the lesser-included-offense test, that the offense of fleeing or attempting to elude a police officer is a lesser-included offense of evading arrest or detention by use of a motor vehicle. *See Walker v. State,* 95 S.W.3d 516, 519 (Tex. App.-Fort Worth 2002, pet. ref'd).[6] In

6. *Accord Klapuch v. State,* No. 13–05–025–CR, 2005 WL 2899661, at *2 (Tex.App.-Corpus

*Walker*, the court applied section one of article 37.09 [7] and reasoned that "[i]n proving that [the] appellant evaded arrest" under an indictment alleging flight from a peace officer whom the appellant knew was attempting to arrest or to detain him lawfully, the State also "established that [the] appellant failed to stop his vehicle" after having been signaled to do so. *See id.*, 95 S.W.3d at 519. The *Walker* court thus equated the intentional-flight element of evading arrest or detention with the failure-to-stop element of fleeing or attempting to elude a police officer. After identifying the controlling issue as "whether proof of the charged offense, in *this* case, actually included proof of the lesser included offense as defined in article 37.09," the *Walker* court reasoned that "[i]n proving that appellant evaded arrest, the State established that appellant failed to stop his vehicle after being given an audible signal to do so by an officer in uniform, displaying his badge, and driving a properly marked police car," the elements of fleeing or attempting to elude a police officer. *Id.* at 518–19. The *Walker* court concluded:

> Thus, the *only difference* between the two statutes as applied to the facts of this case is the element of evading arrest that requires appellant's knowledge that the officer was attempting to lawfully arrest or detain him. Accordingly, because the elements of fleeing or attempting to elude a peace officer are

included within the proof necessary to establish evading arrest, fleeing or attempting to elude a peace officer is a lesser included offense of evading arrest.

*Id.* at 519 (emphasis added).

Appellant argues that *Walker* is incorrectly decided for two reasons. First, he argues that the *Walker* court never expressly considered that the *mens rea* required for fleeing or attempting to elude a police officer (wilful action) is greater than that required for evading arrest or detention (intentional action). *See* TEX.CODE CRIM. PROC. ANN. art. 37.09, §§ 1, 3 (Vernon 2006) (defining lesser-included offense as, among other things, being established by proof of same or fewer than all facts needed to establish charged offense or differing from charged offense only by less culpable mental state); *compare* TEX. TRANSP. CODE ANN. § 545.421(a) (requiring wilful failure or refusal to stop vehicle or wilful flight or attempt to elude) *with* TEX. PEN.CODE ANN. § 38.04(a) (requiring intentional flight). Second, appellant argues that "the offense of fleeing [or attempting to elude a police officer] requires proof of more facts which are different ... [from those required] to prove the offense of evading detention." [8] We need discuss only appellant's second argument: that the offense of fleeing or attempting to elude a police officer requires proof of more facts than are required to prove the charged offense.

Christi Nov.3, 2005, no pet.) (not designated for publication) (citing *Walker*; noting that State did not dispute that fleeing or attempting to elude police officer is lesser-included offense of evading arrest or detention); *Martin v. State*, No. 02–04–107–CR, 2005 WL 1926408, at *4 (Tex.App.-Fort Worth Aug.11, 2005, no pet.) (not designated for publication) (citing *Walker*); *Farmer v. State*, No. 12–03–00117–CR, 2004 WL 1574267, at *3 (Tex. App.-Tyler July 14, 2004, no pet.) (not designated for publication) (citing *Walker*).

7. *See* TEX.CODE CRIM. PROC. ANN. § 37.09, § 1 (Vernon 2006).

8. Appellant actually argues that "the offense of fleeing requires proof of more facts which are different, not knowing that a police officer is trying to detain or arrest, [than] to prove the offense of evading detention," which is confusingly worded. However, liberally construing his argument, and in light of his discussion at oral argument, we understand appellant to argue the issue as we have stated it above. *See* TEX.R.APP. P. 38.9.

## C. Discussion

"The starting point in any analysis of lesser included offenses is [Code of Criminal Procedure] Article 37.09." *Jacob v. State,* 892 S.W.2d 905, 907 (Tex.Crim.App. 1995). Article 37.09 provides:

An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX.CODE CRIM. PROC. ANN. art. 37.09. We conduct the analysis of whether one offense is a lesser offense of another on a case-by-case basis. *See Jacob,* 892 S.W.2d at 907; *Flores v. State,* 888 S.W.2d 187, 192 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd).

We begin, as did the *Walker* court, with section one of article 37.09. *See Walker,* 95 S.W.3d at 519 (applying section one of article 37.09 in reaching holding that fleeing or attempting to elude a police officer is lesser-included offense of evading arrest or detention). In determining whether a charge on a lesser-included offense is required under section one of article 37.09, we apply a two-step analysis. *Feldman v. State,* 71 S.W.3d 738, 750 (Tex.Crim.App. 2002); *Rousseau v. State,* 855 S.W.2d 666, 672 (Tex.Crim.App.1993). Under the first part of this analysis, we consider whether the lesser-included offense is included

within the proof necessary to establish the charged offense. TEX.CODE CRIM. PROC. ANN. art. 37.09, § 1; *Rousseau,* 855 S.W.2d at 672. Under the second step, we determine whether the record includes some evidence that would permit a jury rationally to find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Feldman,* 71 S.W.3d at 750. This two-part analysis applies whether the defendant or the State requests the lesser-included-offense charge. *See Arevalo v. State,* 943 S.W.2d 887, 890 (Tex.Crim.App.1997).

■ Under the first step of the *Rousseau* lesser-included-offense test for section one of article 37.09 (considering whether the lesser-included offense is included within the proof necessary to establish the charged offense), a lesser-included offense is determined by examining (1) the elements of the offense charged; (2) the statutory elements of the offense claimed to be the lesser-included offense; and (3) the proof presented at trial to show the elements of the charged offense. *Hayward v. State,* 158 S.W.3d 476, 478 (Tex. Crim.App.2005); *Jacob,* 892 S.W.2d at 907–08; *see* TEX.CODE CRIM. PROC. ANN. art. 37.09, § 1. We explain these three prongs of what we call the *"Hayward-Jacob* test" below.

■ The first two prongs of the *Hayward–Jacob* test, which in essence require the comparison of the two offenses' elements, exist because article 37.09, section one's "proof of the same or less than all the facts required to establish the ... offense charged" language generally refers to the facts required to prove the elements of the greater offense, as modified by the charging instrument. *See Hayward,* 158 S.W.3d at 478 ("When we review a trial court's decision to deny the request, we consider the charged offense, the statutory elements of the lesser offense, and the evidence actually presented at trial. More

specifically, we examine the statutory elements of the charged offense as modified by the indictment.") (footnotes omitted); *Jacob*, 892 S.W.2d at 908 (holding that " '[f]acts required' " language of article 37.09, section one "means the evidence legally required to prove the elements" of charged offense). That is, if an offense's elements are proved by the same or less evidence than that required to prove the elements as they are alleged for the charged offense, then the former may be a lesser-included offense of the latter.[9] *See Hayward*, 158 S.W.3d at 478; *Jacob*, 892 S.W.2d at 908; *see also Hernandez v. State*, 819 S.W.2d 806, 813 (Tex.Crim.App. 1991) ("A charge on a lesser included offense must be given if the lesser included offense is necessarily included within the proof required to establish the offense charged...."). The elements of the lesser offense need be only functional equivalents of the elements of the charged offense. *Hayward*, 158 S.W.3d at 478; *Jacob*, 892 S.W.2d at 908; *see also Bell v. State*, 693 S.W.2d 434, 438–39 (Tex.Crim.App.1985) (holding that reckless conduct was lesser-included offense of aggravated assault by threatening another with imminent bodily injury by use of deadly weapon because "[t]he danger of serious bodily injury [in the lesser offense] is necessarily established when a deadly weapon is used in the commission of an offense [as required for the greater offense].") (emphasis omitted). Thus, under the first two prongs of the *Hayward–Jacob* test, courts are to compare the elements of the offenses (as the one offense's elements are modified by the charging instrument) for functional equivalency.

Only after such a comparison does the court proceed to the third prong of the *Hayward–Jacob* test: an examination of the evidence that the State presented to prove the charged offense in order to determine if that proof also shows the lesser-included offense. *See Hayward*, 158 S.W.3d at 478–79; *Jacob*, 892 S.W.2d at 907–08. As for this third prong, the question is not whether the charged offense is capable of being established on some theory that does not show the lesser-included offense, but, rather, whether the State, in proving the charged offense, also presents evidence showing the lesser offense. *Bartholomew v. State*, 871 S.W.2d 210, 212 (Tex.Crim.App.1994) (quoting *Broussard v. State*, 642 S.W.2d 171, 173 (Tex.Crim.App. 1982)) (holding that trial court erred in denying lesser-offense instructions on speeding and racing when some evidence showed that defendant was speeding and racing and when information charged reckless driving by "exceeding the posted speed limit and engaging in a race").

Section one of article 37.09, like all of that article's sections, is constitutional precisely because it is stated with reference to the elements (as modified by the charging instrument) of the offense charged and "does not enlarge upon the offense charged, but ... restricts ... as compared to the offense charged." *Jacob*, 892 S.W.2d at 907; *cf. Mello v. State*, 806 S.W.2d 875, 877 (Tex.App.-Eastland 1991, pet. ref'd) ("The elements of lesser included offenses are considered to have been alleged within the elements in the indictment alleging the greater offense."). As the Court of Criminal Appeals has explained:

9. For example, if a penal statute defines more than one way in which an offense may be committed, a charging instrument alleging that an offense has been committed in one of those statutory ways may include a particular lesser offense, whereas an allegation that the offense was committed in another way might not. *Bell v. State*, 693 S.W.2d 434, 436 (Tex. Crim.App.1985).

"Facts required" means the evidence legally required to prove the elements. For instance, the State may prove more than is legally required by also proving a different offense than the charged offense just because of the facts in the particular case. The constitutional validity of Article 37.09 rests in part on its reference to the offense charged and to the restricted or reduced culpability of the lesser included offense as compared to the offense charged. Otherwise a defendant could be convicted of offenses not subsumed in the charged offense but shown by the evidence presented. That is why a lesser included offense is defined with reference to the facts "required" to establish the charged offense rather than to facts presented at trial.

*Jacob*, 892 S.W.2d at 908 (citation omitted).

With these principles in mind, we examine the following elements of the allegedly lesser offense of fleeing or attempting to evade a police officer:

● Existence of a "pursuing police vehicle" *(fourth element in chart above)*
● Existence of officer in uniform and prominently displaying badge *(sixth element in chart above)*
● Officer's operation of vehicle "marked as an official police vehicle" *(seventh element in chart above)*
● Giving of a "visual or audible signal" *(fifth element in chart above)*

The offense of fleeing or attempting to elude a police officer requires that the defendant be signaled visually (by hand or emergency light) or audibly (by voice or siren) to stop and that he be pursued by a marked police vehicle that is driven by a uniformed officer with a prominently displayed badge. *See* Tex. Transp. Code Ann. § 545.421(a), (b). The offense of evading arrest or detention does not expressly contain these elements. *See* Tex. Pen.Code Ann. § 38.04(a). The *Walker* court none-

theless concluded that these four elements did not prevent the offense of fleeing or attempting to elude a police officer from being a lesser-included offense of evading arrest or detention:

[T]he indictment charged that appellant did "intentionally flee from Jason Couch, a person the Defendant knew to be a police officer lawfully attempting to arrest or detain the Defendant, and the Defendant used a vehicle in said flight." *In proving that appellant evaded arrest, the State established* that appellant failed to stop his vehicle after being given an audible signal to do so by an officer in uniform, displaying his badge, and driving a properly marked police car.

*Walker*, 95 S.W.3d at 519 (emphasis added). Given this reasoning, it is obvious that the State's evidence actually showed that the officer in *Walker* was uniformed and driving a marked vehicle when he tried to stop the defendant.

Here, the indictment alleged:

[Appellant] . . . heretofore on or about JUNE 11, 2004, did then and there unlawfully, intentionally flee from [Officer Roi], hereafter styled the Complainant, a peace officer employed by HOUSTON POLICE DEPARTMENT, lawfully attempting to DETAIN [appellant], and [appellant] knew that the Complainant was a peace officer attempting to DETAIN [appellant], and [appellant] used a motor vehicle while he was in flight.

The State's evidence, when viewed in the required light, implied or showed that Officer Roi was uniformed, had on his badge, and was pursuing appellant in a marked vehicle when he signaled appellant to stop with his lights and siren. This situation is indistinguishable from that in *Walker*.

■ We nonetheless respectfully decline to follow the *Walker* court on this point.

That the State *could* and *did* present evidence of these four additional facts in proving appellant's guilt of the charged offense does not mean that the State was *required* to do so. It is only the latter inquiry that determines whether an offense constitutes a lesser-included offense of the charged offense. *See, e.g., Jacob,* at 892 S.W.2d at 908. That is, only if the State was *required* to prove these four matters—that Officer Roi was uniformed and that his badge was prominently displayed, that he drove a marked vehicle, that he pursued appellant with that vehicle, and that appellant was signaled audibly or visually (in one of the four mentioned ways) to stop—in order to prove the charged offense would the State have been entitled to a lesser charge on fleeing or evading a police officer.

We conclude that the State was not required to prove at least three of these additional facts to prove the charged offense and, therefore, that the uncharged offense's elements requiring proof of these three facts were neither the functional equivalents of the elements of the charged offense nor were they included within the charged offense's elements.[10] For example, as charged here, the offense of evading detention required that the State prove only that appellant, by using a motor vehicle, intentionally fled from Officer Roi when appellant knew that Officer Roi was a peace officer attempting to detain him lawfully. *See* TEX. PEN.CODE ANN. § 38.04(a). That offense did not require the State to prove, for example, that Officer Roi was in a vehicle of any kind (as unusual as that scenario might be when the suspect is in a vehicle);[11] that the officer was uniformed and prominently displaying his badge;[12] or that, if the officer was using a vehicle, that vehicle was appropriately marked as an official police vehicle.[13] The fact that the State *did* prove these things in the process of proving the statutorily required elements of evading detention is irrelevant. *See Jacob,* 892 S.W.2d at 908. We respectfully disagree with the *Walker* court's conclusion to the contrary because its conclusion appears to have rested on what evidence the State actually presented, rather than on what evidence the State was required to present, to prove the charged offense. *See Walker,* 95 S.W.3d at 519 ("Here, the indictment charged that appellant did 'intentionally flee from Jason Couch, a person the Defendant knew to be a police officer lawfully attempting to arrest or detain the Defendant, and the Defendant used a vehicle in said flight.' *In proving that appel-*

10. Because it is unnecessary to our disposition, we do not consider whether the uncharged offense's element that the defendant be signaled audibly or visually to stop requires the same proof as—and thus is the functional equivalent of—the element of evading arrest or detention that the defendant *know* that the peace officer is trying to arrest or to detain him.

11. For example, appellant could have committed an offense under section 38.04, as charged here, if Officer Roi had been chasing appellant's car on foot. *See Alejos v. State,* 555 S.W.2d 444, 449 (Tex.Crim.App.1977) (in considering different issue, noting that section 38.04 does not require peace officer to be in any type of vehicle).

12. For example, appellant could have committed an offense under section 38.04, as charged here, if Officer Roi had been in plain clothes while attempting to detain appellant— as long as appellant knew that Officer Roi was a peace officer. *See Alejos,* 555 S.W.2d at 449 (in considering different issue, noting that section 38.04 does not require that officer be in uniform).

13. For example, appellant could have committed an offense under section 38.04, as charged here, if Officer Roi had been pursuing appellant in an unmarked car—as long as appellant knew that his pursuer was a peace officer.

*lant evaded arrest, the State established* that appellant failed to stop his vehicle after being given an audible signal to do so by an officer in uniform, displaying his badge, and driving a properly marked police car.") (emphasis added).

## D. The State's Authority

At oral argument, the State cited to *Cunningham v. State,* in which the Court of Criminal Appeals held that indecency with a child was a lesser-included offense of aggravated sexual assault of a child in that case, notwithstanding the fact that the former offense contained the element that the defendant act with specific intent to arouse or to gratify someone's sexual desire, while the charged offense did not. *Id.,* 726 S.W.2d 151, 155 (Tex.Crim.App. 1987); *compare* TEX. PEN.CODE ANN. § 22.021(a)(1)(B)(ii), (2)(A)(iii) (Vernon Supp.2006) (aggravated sexual assault; not requiring intent to arouse or to gratify sexual desire) *with id.* § 21.11(a)(1), (c) (Vernon 2003) (indecency with child; requiring intent to arouse or to gratify sexual desire of any person). The State argues that *Cunningham* supports a holding that the lesser-included offense here was properly charged because that authority allows, under the proper evidence presented, an offense to be a lesser-included offense even if it has an additional element that is not the functional equivalent of any element of the greater offense.

We disagree that *Cunningham* controls, although we agree that that court held what the State contends. It is true that, in reaching its conclusion, the *Cunningham* court appears to have reasoned, in effect, that the lesser offense's element of acting with specific intent to arouse or to gratify the sexual desire of any person was necessarily inherent in the greater offense's element (as alleged in that case) of knowingly causing the penetration of the

child's mouth by the defendant's sexual organ, which might distinguish that case from this. However, the *Cunningham* court also reasoned as follows:

> While the 1983 changes may indicate a legislative preference that the thrust of sexual assault of a child be regarded as more assaultive in nature than sexual abuse of a child, *we must not confuse statutory elements in the definition of an offense with evidentiary facts that prove it.* That the Legislature altered the nature of the offense does not rule out the fact that an act of causing penetration of the mouth of a child by the penis of another will be accompanied with specific intent to arouse or gratify sexual desire of the actor. *The issue is "whether the State's case as presented to prove the offense charged included proof of [a lesser included offense],"* not "whether the primary offense is capable of proof on some theory that would not show [a lesser included offense]."

*Cunningham,* 726 S.W.2d at 154 (citations omitted; emphasis added). That reasoning is broader than would allow for the potential distinction noted above, and that reasoning appears to us to conflict with later Court of Criminal Appeals's pronouncements in cases like *Jacob.* In *Jacob,* the court held that focusing on the evidence that the State presented to prove the charged offense "negates the language of Article 37.09(1) by changing 'facts required' into 'facts presented.'" *Jacob,* 892 S.W.2d at 908. The *Jacob* court went on to hold that "facts required" means "the evidence legally required to prove the elements" of the offense as charged. *Id.* The *Jacob* court then instructed that "first a *statutory analysis* and then a factual analysis must be done in light of the charged offense," including examining the claimed lesser offense's elements to see if they are functionally the same as or less than those required to prove the offense charged. *Id.*

(emphasis added). The analysis adopted by the *Jacob* court thus begins with a comparison of the elements of the two offenses (taking into account how the greater offense's elements have been modified by the charging instrument) for functional equivalency before examining the evidence presented to prove the State's case. The above-quoted reasoning of *Cunningham* thus violates the spirit, if not the letter, of the rule exemplified by *Jacob*.

The Court of Criminal Appeals has at times followed the logic of *Cunningham*. *See Goodin v. State*, 750 S.W.2d 789, 790 (Tex.Crim.App.1988) (in reviewing court of appeals's judgment, in case in which court of appeals had held that conspiracy was not lesser-included offense of murder because former required showing of agreement, while latter did not, citing *Cunningham* and stating, "We do not, however, agree with the Court of Appeals' language indicating that a determination of whether an instruction on a lesser included offense should be given should be based on whether the lesser included offense has elements not required for the primary offense."); *see also Campbell v. State*, 571 S.W.2d 161, 162 (Tex.Crim.App.1978) (in concluding that theft was lesser-included offense of aggravated robbery in that case, stating, "The theft was without question proven within the facts relied on by the State to make its case of aggravated robbery"); [14] *cf. Ochoa v. State*, 982 S.W.2d 904, 908 (Tex.Crim.App.1998) (in double-jeopardy case, analogizing to *Cunningham* and ex-plaining it as follows: "This Court determined the Legislature did not intend that the 'intent to arouse and gratify' requirement [of indecency with a child] be excluded from proof of the elements of aggravated sexual assault," which did not expressly include that element). Nonetheless, judges on the Court of Criminal Appeals have also questioned *Cunningham's* reasoning. *Cf. Ochoa*, 982 S.W.2d at 909 (Keller, J., joined by Mansfield, J., concurring in judgment) (in double-jeopardy case, criticizing majority's reliance on *Cunningham* because it did not concern prosecution of two offenses and because "*Cunningham's* conclusion that an offense was lesser-included based *upon proof at trial* appears to be contrary to precedent from the Supreme Court and this Court in that respect.") (emphasis in original). And, even more recently, the Court of Criminal Appeals has followed *Jacob's* test. *See Hayward*, 158 S.W.3d at 479–80 (following and explaining *Jacob's* analysis); *see also Irving v. State*, 176 S.W.3d 842, 845–46 (Tex.Crim.App.2005) (citing *Jacob*); *Campbell v. State*, 149 S.W.3d 149, 153 (Tex.Crim.App.2004) (citing *Jacob's* test).

We conclude that the reasoning of *Cunningham* quoted earlier is irreconcilable with the Court of Criminal Appeals's holdings and reasoning in more recent cases such as *Hayward* and *Jacob*. Presented with this conflict, we determine that we must follow the line of authority represented by *Hayward* and *Jacob*, rather than

---

14. The Court of Criminal Appeals has since described language like this in *Campbell* as not "as clear as [it] could be" and has interpreted *Campbell* as holding—consistent with the *Jacob* court's holding—that the article 37.09, section one "factual determination is done by reference to the charged offense, not by reference only to the facts presented at trial." *Jacob*, 892 S.W.2d at 909. Consistent with that understanding of *Campbell*, the *Jacob* court interpreted the *Campbell* court properly to have held that, because the State's proof showed one particular means of committing aggravated robbery (by completed theft), and because the indictment alleged acts including attempted theft, completed theft, and immediate flight after either, theft was a lesser-included offense of aggravated robbery under the indictment and facts in that case. *Id.* (explaining *Campbell v. State*, 571 S.W.2d 161, 162 (Tex.Crim.App.1978)).

that represented by *Cunningham*, for the following reasons. First, the *Hayward–Jacob* statement of the lesser-included-offense rule better comports with the plain language of article 37.09, section one: "proof of the same or less than all the facts *required* to establish the ... offense charged." Tex.Code Crim. Proc. Ann. art. 37.09, § 1 (emphasis added). Second, the *Hayward–Jacob* test better protects the constitutional "notice" concern that lies at the heart of that test. By being charged with an offense, a defendant is also put on notice that he may be convicted of any lesser offense coming within the charged offense's elements that is raised by the facts, even when the elements of those potential lesser offenses are not recited in the indictment. *See Allison v. State*, 618 S.W.2d 763, 764 (Tex.Crim.App.1981) ("The greater offense, when properly alleged, necessarily includes all the lesser included offenses whether each of their constituent elements are alleged in the wording of the indictment on the greater offense or not."); *Day v. State*, 532 S.W.2d 302, 313, 315 (Tex.Crim.App.1975) (op. on reh'g) (indicating that article 37.09 did not differ materially from predecessor statute in that both versions allowed conviction for lesser offenses even though elements of lesser offenses were not recited in charging instrument); *Arevalo v. State*, 918 S.W.2d 46, 49 (Tex.App.-Houston [1st Dist.] 1996) ("When the State alleges an offense, it also alleges, albeit implicitly, all lesser offenses included within that offense. Thus, when the State wants to proceed on a lesser included offense, it is unnecessary to seek a new indictment."), *vacated on other grounds*, 947 S.W.2d 887 (Tex.Crim.App.1997). Article 37.09, section one comports with Due Process notice because, in requiring that the lesser of-

fense be established by proof of the same or fewer facts *required* to establish the charged offense, the section "does not enlarge upon the [elements of the] offense charged, but ... restricts [them] ... as compared to the offense charged" and, thus, the defendant is immediately put on notice by the charging instrument of all offenses for which he may possibly be convicted. *Jacob*, 892 S.W.2d at 907 (citing *Day*, 532 S.W.2d at 315).

Both the *Jacob* and *Cunningham* courts relied on *Day*,[15] but we conclude that the *Jacob* court's holding better comports with *Day's* reasoning as to why article 37.09, section one's lesser-included-offense rule is constitutional. A defendant is simply not put on notice, consistent with the Due Process or Due Course of Law clauses, that he may be convicted of an offense that contains an additional element—like the intent-to-arouse-or-to-gratify-sexual-desire element of the lesser offense in *Cunningham*—by a charging instrument that alleges an offense not including that element or its functional equivalent. That is, that the evidence *actually presented* shows the additional element does not suffice to give Due Process notice retroactively. Moreover, the author of the rehearing opinion in *Day*, Judge Odom, clarified shortly after *Day* what he meant by the dictum on which both the *Jacob* and *Cunningham* courts relied:

> The restrictive effect of the word "required" in Art. 37.09(1) cannot be ignored. In applying the test one does not examine what the proof [s]howed in establishing the offense charged; rather one must look to what facts in the proof were [r]equired to establish the offense charged. The broader reading of the

15. *See Jacob*, 892 S.W.2d at 907–08; *Cunningham v. State*, 726 S.W.2d 151, 154 (Tex. Crim.App.1987).

statute would render [a]ny offense incidentally proven in the course of trial a lesser included offense, and authorize its submission to the jury. Such "lesser included offenses" under Art. 37.09(1) would include any offense committed near the time of the offense charged and proven up as "res gestae" of the offense, any offenses committed near the time of arrest and proven up as "res gestae" of the arrest, any extraneous offenses proven in rebuttal on an issue raised by the defense, and any other offense shown incidentally in the course of the trial, because any such offense would have been established by what the proof of the offense charged [s]howed, even though it was not established by the proof of the facts [r]equired to establish the offense charged. Such a broad reading of Art. 37.09(1) is impermissible.

*Graves v. State,* 539 S.W.2d 890, 893 (Tex. Crim.App.1976) (Odom, J., concurring). The *Jacob* court's statement and application of the lesser-included-offense test better comports with *Day's* reasoning and

ensures article 37.09, section one's constitutionality.[16]

For these reasons, we decline to follow *Cunningham.*

### E. Conclusion Concerning Error

We hold that the first step of the *Rousseau* lesser-included-offense test could not have been met under section one of article 37.09.

 No other section of article 37.09 allows the lesser charge given here. For example, the second provision of article 37.09 makes an offense a lesser-included offense if it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09, § 2 (Vernon 2006). The public interest protected by the statute criminalizing evading arrest or detention is to encourage suspects to yield to a police show of authority; the gravamen of the offense is the evasion of an arrest or detention, rather than the evasion of a police officer.[17] In contrast,

---

**16.** The misapplication and consequent expansion of *Day* is not unique to *Cunningham. See Ex parte McWilliams,* 634 S.W.2d 815, 828 n. 13 (Tex.Crim.App.1980) (Roberts, J., dissenting on rehearing) (noting that "[t]he dictum in *Day* that the statute 'defines lesser included offense in terms of the facts of the case' has been misinterpreted to mean the evidence in the case. Under this misinterpretation, the offense of unlawfully carrying a weapon could be a lesser included offense of murder if the evidence showed that the alleged murderer was carrying a weapon. The correct construction of *Day* (and of the statute) is that the term 'facts' refers to 'factual elements.' By this construction, the lesser included offenses in a case can be determined from the four corners of the indictment, which alleges the 'facts required to establish the commission of the offense,' as distinguished from mere matters of evidence."), *qualified on other grounds by May v. State,* 726 S.W.2d 573 (Tex.Crim.App.1987).

**17.** *Cf. Jackson v. State,* 718 S.W.2d 724, 726 (Tex.Crim.App.1986) (in dictum, noting that Court of Appeals had correctly indicated that "[t]he gravamen of the offense [under section 38.04] is the evasion of an arrest, not the evasion of a police officer."); *Alejos,* 555 S.W.2d at 449 (in considering different issue, noting that section 38.04's intent was "to deter flight from arrest by the threat of an additional penalty, thus discouraging forceful conflicts between the police and suspects"); *Johnson v. State,* 864 S.W.2d 708, 722–23 (Tex.App.-Dallas 1993) (in discussing different issue, noting that "[t]he Texas Legislature has made clear its support of the public policy of encouraging suspects to yield to a police show of authority" and that intent of section 38.04's prohibition of evading arrest and detention is to deter flight from arrest or detention by threat of additional penalty in order to discourage forceful conflicts between police and suspects) (quoting *Alejos,* 555 S.W.2d at 449), *aff'd,* 912 S.W.2d 227, 235 (Tex.Crim.App.

the public interest protected by the statute criminalizing fleeing or attempting to elude a police officer is the safety and orderly regulation of traffic on Texas highways.[18] Despite the fact that the public interest protected by the latter offense could be viewed as being different from,[19] and perhaps less serious than, the public interest protected by the former offense, this is not the *only* difference between the two statutes. Thus, section two of article 37.09—which applies if the *only* difference between the two offenses is a less serious injury or risk of injury to the same person, property, or public interest—cannot apply. Likewise, the third provision of article 37.09—which makes an offense a lesser-included offense if the only difference between it and the greater offense is a less culpable mental state—cannot apply because, even assuming without deciding that these culpable mental states are not functional equivalents and that wilful is a lesser culpable mental state than intentional, the statutes have other differences. *See id.* art. 37.09, § 3. The fourth provision of article 37.09—which makes an offense a lesser-included offense if it consists of an attempt to commit the charged offense or an attempt to commit "an otherwise included offense" of the charged offense—obviously does not apply here because the offense charged here as a lesser offense was not an "attempt" offense. *See id.* art. 37.09, § 4.

Accordingly, we hold that the trial court erred in charging the jury on the lesser-included offense.

## F. Harm

■ Having found error, we apply the harm standard in *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). *Ortiz v. State,* 144 S.W.3d 225, 230–31 (Tex. App.-Houston [14th Dist.] 2004, pet. ref'd) (applying *Almanza* harm standard to complaint that trial court erred in charging jury on lesser-included offense). Although appellant objected to the submission of the lesser-included offense before the jury was charged, he did not do so on the basis that we have addressed (the first step of the *Rousseau* lesser-included-offense test, which he raised for the first time after trial), arguing instead that no evidence showed commission of only the lesser-included offense (the second step of the *Rousseau* lesser-included-offense test). Accordingly, we review for egregious harm. *McKinney v. State,* 177 S.W.3d 186, 201 (Tex.App.-Houston [1st Dist.] 2005) (citing *Almanza,* 686 S.W.2d at 171 and Tex.Code Crim. Proc. Ann. art. 36.19 (Vernon 2006)), *aff'd,* 207 S.W.3d 366 (Tex. Crim.App., 2006). Egregious harm occurs when the error "affects 'the very basis of the case,' deprives the defendant of a 'valuable right,' or 'vitally affect[s] a defensive theory.' " *Olivas v. State,* 202 S.W.3d 137, 144 (Tex.Crim.App.2006) (quoting *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App. 1996) and *Almanza,* 686 S.W.2d at 172). In this determination we should generally consider (1) the charge; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) counsels' arguments; and (4) any other

1995) (citing section 38.04 for proposition that "[t]he state legislature has fostered the policy of encouraging suspects to yield to a police show of authority.").

**18.** *See Burke v. State,* 28 S.W.3d 545, 547 (Tex.Crim.App.2000) (in dictum, explaining that *Alejos* court had indicated that primary focus of predecessor to section 545.421 was

safety and orderly regulation of highway traffic).

**19.** *Cf. Alejos,* 555 S.W.2d at 449, 450–51 (in considering different issue, noting that section 38.04 and predecessor to section 545.421 were "designed to serve different purposes and objectives" and that they were intended to cover "different situations").

relevant information revealed by the trial record as a whole. *Id.*

In this case, we may stop our consideration at the first factor—the charge itself—because the harm flowing from the charge was obvious. The jury acquitted appellant of the charged offense and convicted him of an offense with which the jury should not have been charged because that offense was not a lesser-included offense. Accordingly, we hold that appellant suffered egregious harm from the trial court's error in submitting the lesser-included-offense charge.

## V. Conclusion

We sustain appellant's third issue to the extent that it concerns whether the State was entitled to the lesser-included-offense charge under the first step of the *Rousseau* lesser-included-offense test. Given our disposition, we need not consider the remainder of appellant's third issue (concerning whether the State was entitled to the lesser-included-offense charge under the second step of the *Rousseau* lesser-included-offense test) or appellant's second issue (concerning the factual sufficiency of the evidence).

■ We reverse the judgment of the trial court and remand the cause with instructions to dismiss the indictment.[20] *See Hampton v. State*, 165 S.W.3d 691, 694 (Tex.Crim.App.2005) (holding that court of appeals's remedy, on remand from rever-

sal for harmful charge error based on failure to meet second step of *Rousseau* lesser-included-offense test, was to remand for "a retrial for [the lesser offense] ... because the jury's verdict that the appellant was guilty of the lesser-included offense ... operates as an acquittal of the greater offense ... to which jeopardy had attached. This prevents a retrial for the greater offense, but not for the lesser offense.") (footnotes omitted); *Konchar v. State*, 938 S.W.2d 500, 502 (Tex.App.-Tyler 1996, no pet.) (concluding that defendant convicted of lesser-included offense (1) is implicitly acquitted of greater offense and (2) may be retried for lesser offense only upon filing of new charging instrument for that offense); *Pullin v. State*, 827 S.W.2d 1, 2 (Tex.App.-Houston [1st Dist.] 1992, no pet.) (in dictum, noting, "If after appeal, the conviction for the lesser offense is reversed and a new trial ordered, the verdict upon the first trial shall be considered an acquittal of the higher offense. The accused, however, may, upon a second trial, be convicted of the same offense for which he was previously convicted, or any other inferior thereto.").

Justice KEYES, concurring: Justice KEYES joins all of the opinion except for section IV, subsection D.

---

**20.** Because the jury convicted appellant of what was submitted as a lesser-included offense, even if it was not actually a lesser-included offense, the jury implicitly acquitted him of the charged offense of evading detention, and the State may not reindict appellant for that offense. *See* Tex.Code Crim. Proc. Ann. art. 37.14 (Vernon 2006) ("If a defendant, prosecuted for an offense which includes within it lesser offenses, be convicted of an offense lower than that for which he is indicted, and a new trial be granted him, or the

judgment be arrested for any cause other than the want of jurisdiction, the verdict upon the first trial shall be considered an acquittal of the higher offense...."); *Pope v. State*, 509 S.W.2d 593, 596 (Tex.Crim.App.1974) (holding that guilty verdict in first trial on what was submitted as second lesser-included offense, despite its not having been lesser-included offense as matter of law, precluded subsequent prosecution for what had been charged as greater offenses in first trial).