

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP–75,917

### EX PARTE GENE WILFORD HATHORN, JR., Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### IN CAUSE NO. 6958-B IN THE 411ᵀᴴ DISTRICT COURT
### TRINITY COUNTY

MEYERS, J., delivered the opinion of the Court in which PRICE, JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.  KELLER, P.J., and WOMACK, J., concurred.

### O P I N I O N

Applicant was convicted of capital murder and sentenced to death in 1985.  On direct appeal, we affirmed his conviction and sentence.  *Hathorn v. State*, 848 S.W.2d 101 (Tex. Crim. App. 1992).  While Applicant's direct appeal was pending before us, the United States Supreme Court handed down an opinion in *Penry v. Lynaugh*, 492 U.S. 302 (1989).  In his initial application for writ of habeas corpus, Applicant argued that his jury was not instructed to consider mitigating circumstances in determining his sentence.  We

denied relief. In a subsequent writ, Applicant claimed that "[t]he former Texas special issue questions operated so as to preclude any meaningful consideration of mitigation evidence by the jury that sentenced the Applicant in violation of the Eighth and Fourteenth Amendments and *Penry v. Lynaugh*, 492 U.S. 302 (1989) (*Penry I*)." Because this was his third subsequent application, it was barred under Code of Criminal Procedure Article 11.071, section 5, and we dismissed the application as an abuse of the writ. We now reconsider, on our own initiative, the *Penry* claim raised in Applicant's initial application for writ of habeas corpus. We filed and set this case and ordered briefs from the parties on the following issues:

1. Did applicant object at trial that his jury was not given an adequate vehicle through which it could give effect to his mitigating evidence? Was any other objection specifically pertaining to mitigating evidence made when discussing the charge to be given the jury?

2. If no objection was made, does this make a difference regarding the resolution of applicant's allegation?

3. Was the mitigating evidence presented at applicant's trial the type of evidence for which applicant was entitled to a separate vehicle?

4. Although applicant's direct appeal began prior to the time the United States Supreme Court handed down the decision in *Penry*, was direct appeal counsel obligated to raise the claim post-submission considering applicant's direct appeal remained pending in this Court for some three years after the *Penry* decision was handed down?

### ISSUES ONE AND TWO

There was no objection at trial pertaining to mitigating evidence. Applicant did

object to the trial court's refusal to include a special issue related to provocation, and it is interesting to note that the evidence in support of the provocation instruction was the same evidence that is now raised as mitigating evidence. The evidence is the same in this case specifically because Applicant killed his father, step-mother, and half-brother and claimed at trial that the murders were provoked by childhood abuse at the hands of his father, which resulted in a longstanding hatred for his family.

Although Applicant made no objection that the jury did not have a vehicle to give effect to mitigating evidence, we have held that, in these particular circumstances, no objection is necessary. *Black v. State*, 816 S.W.2d 350 (Tex. Crim. App. 1991). The case law at the time of *Black*'s trial and Applicant's trial stated that, regardless of whether the defendant objected to the charge or whether special mitigation instructions were requested, the defendant was not entitled to any jury instructions on mitigating evidence beyond that covered by the future-dangerousness special issue. We stated in *Black*,

> Given the settled state of the case law at the time of appellant's trial, we refuse to fault him or his attorney for failing to object to the jury charge at punishment or request an instruction informing the jury it may give effect to the mitigating evidence presented at trial. Under the established precedent, the trial judge would have been correct in overruling the objection or denying the additional instruction, and clearly the defendant would not have been granted relief from this Court on direct appeal.

816 S.W.2d at 364. We held that, for cases tried during this time period, there was no procedural default and thus we were able to address the merits of the claim. *Id*.

We acknowledge that normally, an egregious harm standard is proper in analyzing

an un-objected-to charge error. However, rather than characterize this as a jury charge error, we interpret the Supreme Court cases related to this particular issue to have broader due process implications. *See infra*.

## ISSUE THREE

The evidence presented at trial was the type of evidence that we have said requires a separate vehicle in order for the jury to be able to give effect to their consideration of the evidence. Applicant testified at the punishment hearing that his father and step-mother were neglectful; that his father was abusive and beat him nightly during his first two years of grade school–on one occasion for going to church; that his father had shot and killed his pony and a dog and appellant had to bury the dog; and that his father was violent and carried a weapon. The former Chief Psychologist for the Texas Department of Corrections testified about Applicant's violent and dysfunctional home environment and how it may have shaped his development and contributed to the offense for which he was charged.

As the Supreme Court pointed out in *Brewer v. Quarterman*, 550 U.S. 286 (2007), the evidence that gives rise to a *Penry* claim is broadly defined as mitigating evidence, which is a "two-edged sword," meaning that it tends "to confirm the State's evidence of future dangerousness as well as lessen [the defendant's] culpability for the crime." *Brewer*, 550 U.S. at 293. The Court also explained that,

> Nowhere in our *Penry* line of cases have we suggested that the question
> whether mitigating evidence could have been adequately considered by the

jury is a matter purely of quantity, degree, or immutability. Rather, we have focused on whether such evidence has mitigating relevance to the special issues and the extent to which it may diminish a defendant's moral culpability for the crime.

*Brewer*, 550 U.S. at 294. On the same day as *Brewer*, the Court decided *Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007), in which the Court illustrated that the special issues given to the jury at the time of Applicant's trial did not provide the jury with a way to give effect to mitigating evidence: "a juror considering [Abdul-Kabir's] evidence of childhood neglect and abandonment and possible neurological damage or Brewer's evidence of mental illness, substance abuse, and a troubled childhood could feel compelled to provide a 'yes' answer to the [future-dangerousness] question, finding himself without a means for giving meaningful effect to the mitigating qualities of such evidence." *Abdul-Kabir* 550 U.S. at 262.

Following these decisions by the Supreme Court, we decided in *Ex Parte Moreno*, 245 S.W.3d 419 (Tex. Crim. App. 2008) that:

> We can no longer maintain that evidence of a troubled childhood is adequately encompassed within the statutory special issues. Both *Abdul-Kabir* and (especially) *Brewer* expressly state that Supreme Court precedent has long rejected the notion that a jury can meaningfully express its reasoned moral response to evidence of a troubled or disruptive childhood within the narrow confines of the special issues.

*Moreno*, 245 S.W.3d at 426. We held that, "The statutory special issues alone did not provide the applicant's jury with an adequate mechanism for exercising its reasoned moral judgment whether his evidence of a troubled childhood warranted the imposition of

a life sentence instead of the ultimate penalty of death." *Id*. *Cf. Black*, 816 S.W.2d at 364 (determining that the future-dangerousness special issue was adequate for the jury to consider the evidence that was presented, which did not include allegations of child abuse or trauma).

As in *Brewer*, it is likely that, in Applicant's case, the jury believed that all they needed to decide was whether he had acted deliberately and would likely be dangerous in the future, disregarding any concern they may feel that, given Applicant's troubled childhood, he may not deserve a death sentence. *See Brewer*, 550 U.S. at 293-294.

**ISSUE FOUR**

Because the United States Supreme Court handed down the decision in *Penry v. Lynaugh*, 492 U.S. 302 (1989), while Applicant's case was pending on direct appeal before us, Applicant could have filed a supplemental brief raising a *Penry* claim at that time. *See Ramirez v. State*, 815 S.W.2d 636, 654-55 (Tex. Crim. App. 1991) (in which we sustained the appellant's *Penry* issue, which was raised for the first time in a supplemental brief submitted while his direct appeal was pending). However, in *Moreno*, we considered the applicant's initial writ although the *Penry* issue had not been raised in a supplemental brief on direct appeal. *Moreno*, 245 S.W.3d 421. *Moreno* was procedurally similar to this case in that the opinion in *Penry I* was handed down while the direct appeal was pending before us. We will not hold Applicant to a different standard by saying that this claim is procedurally defaulted by his failure to file a supplemental

brief raising this issue on direct appeal.

## CONCLUSION

Given the unique circumstances of this case, and the state of the law at the time of Applicant's trial and direct appeal, Applicant's claim is not barred by procedural default for failure to object to the lack of a mitigation instruction at trial, or for failure to file a supplemental brief raising a *Penry* claim on direct appeal. Because the mitigating evidence presented at Applicant's trial is the type of evidence for which he was entitled to a separate vehicle for consideration, we remand the case to the trial court for new punishment hearing.

Meyers, J.

Delivered: April 8, 2009

Publish