

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NOS. WR-11,312-01 & WR-11,312-04

### EX PARTE RAYMOND GEORGE RILES, Applicant

### ON APPLICATIONS FOR WRITS OF HABEAS CORPUS
### IN THE 179TH DISTRICT COURT
### HARRIS COUNTY

**HERVEY, J., delivered the opinion of the Court. SLAUGHTER, J., filed a dissenting opinion in which RICHARDSON and YEARY, JJ., joined.**

### O P I N I O N

Before the Court is Applicant's fourth postconviction writ application (-04), or alternatively, his suggestion to reconsider our denial of his first postconviction writ application (-01). In his -04 application, Applicant alleges that his death sentence resulted from constitutionally inadequate jury instructions in violation of the Eighth Amendment and the decisions of the United States Supreme Court in *Penry v. Lynaugh*, 492 U.S. 302 (1989), and its progeny. Applicant raised a substantially similar claim in his first postconviction writ application, before *Penry* was decided, but the Court denied the claim in 1982. Applicant contends that subsequent legal developments show that our

disposition of his -01 writ is no longer supportable.

Applicant's present-day application (-04) satisfies the legal unavailability exception to Article 11.071, § 5(a)'s prohibition against subsequent writ applications.[1] Therefore, we need not consider whether it is appropriate to take the unusual measure of reconsidering a previously decided habeas application. *See Ex parte Moreno*, 245 S.W.3d 419, 427 (Tex. Crim. App. 2008). Because no additional factfinding is required to resolve the merits of Applicant's *Penry* claim, we find it judicially efficient to adjudicate the merits without first remanding the case to the trial court. After review, we grant relief in the form of a new punishment proceeding.

## BACKGROUND

Applicant was convicted and sentenced to death in 1978 for shooting John Thomas Henry to death while in the course of committing robbery. *See* TEX. PENAL CODE § 19.03. Applicant mounted an insanity defense at trial. To support that defense, Applicant presented testimony from family members. These relatives told the jury about Applicant's odd and often violent behavior as a child, adolescent, and adult; their unsuccessful efforts to have his mental health professionally evaluated; and that several of Applicant's close blood relatives had been committed to psychiatric institutions.

---

[1] All reference to "articles" in this opinion refer to the Texas Code of Criminal Procedure unless otherwise specified. Applicant's first three writ applications were filed under a version of Article 11.07, which did not include a provision barring subsequent writ applications. Applicant's fourth writ application is the first to be subject to the subsequent writ provisions of Article 11.071, which became effective on September 1, 1995.

Applicant also presented testimony from several psychiatrists and psychologists who evaluated him at various points after the offense. These witnesses collectively testified that Applicant was often psychotic and had suffered for some time from some type of schizophrenia. They opined that Applicant had been legally insane at the time of the offense and that his mental illness played a role in some of his violent behavior preceding the offense.

The jury rejected Applicant's insanity defense and convicted him of capital murder. Applicant's jury received only two special issues to decide at the punishment phase. The first special issue asked the jury to determine whether Applicant's conduct that caused the victim's death "was committed deliberately and with the reasonable expectation that the death of the deceased or another would result[.]" The second special issue asked the jury whether there was a probability that Applicant "would commit criminal acts of violence that would constitute a continuing threat to society[.]" The jury answered both of these questions in the affirmative, and the trial court accordingly sentenced Applicant to death. *See* Art. 37.071, § 2(g).

Applicant argued in his -01 application (and argues in -04 application) that neither instruction provided the jury with an adequate vehicle for considering and giving mitigating effect to the mental health evidence he presented at trial. We denied this claim without written order in 1982. *Ex parte Riles*, No. WR-11,312-01 (Tex. Crim. App. June 9, 1982). Applicant filed his second and third writ applications, which focused primarily on his competency to be executed, in the trial court in July 1986 and December 1987, respectively. We

denied relief on Applicant's second writ application. *Ex parte Riles*, No. WR-11,312-02 (Tex. Crim. App. Sept. 16, 1986) (not designated for publication). We filed and set Applicant's third writ application and granted habeas relief to the extent of staying his execution until he is competent to be executed. *Ex parte Riles*, No. AP-71,542 (Tex. Crim. App. Nov. 18, 1992) (not designated for publication).

The Supreme Court decided *Penry* in 1989. *See* 492 U.S. 302. Applicant filed his -04 writ application in the trial court on June 30, 2020. He argues that his jury instructions were constitutionally inadequate under *Penry* and that we wrongly decided the pre-*Penry* claim he raised in his -01 writ application.

SECTION 5

Applicant's -04 writ application is subject to Article 11.071, § 5(a). Therefore, we may not consider the merits of his present *Penry* claim unless Applicant shows that he meets one of the statutory exceptions to the prohibition against subsequent writ applications. Applicant argues that he satisfies § 5(a)(1)'s "legal unavailability" exception because *Penry* had not been decided when he filed any of his earlier writ applications.

Section 5(a)(1) states:

(a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

(1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application[.]

Art. 11.071, § 5(a)(1).

We agree that Applicant satisfies § 5(a)(1)'s legal unavailability exception. The Supreme Court decided *Penry* in 1989. Applicant filed all of his prior writ applications in the trial court before that date. Accordingly, the legal basis of the claim was not available when Applicant filed his earlier writ applications.

## MERITS

A *Penry* violation occurred in this case. The mental health evidence that Applicant presented at his trial is the type of evidence that both this Court and the Supreme Court have come to regard as the kind of "two-edged" mitigating evidence calling for a separate, mitigation-focused jury instruction. *See, e.g.*, *Smith v. Texas*, 550 U.S. 297 (2007); *Brewer v. Quarterman*, 550 U.S. 286 (2007); *Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007); *Tennard v. Dretke*, 542 U.S. 274 (2004); *Ex parte Smith*, 309 S.W.3d 53, 61–62 (Tex. Crim. App. 2010); *Ex parte Moreno*, 245 S.W.3d 419, 424–45 (Tex. Crim. App. 2008); *Ex parte Martinez*, 233 S.W.3d 319, 320 (Tex. Crim. App. 2007). Applicant's jury did not receive any such instruction. And, whatever harm analysis rightly applies in this situation, we conclude that the absence of a *Penry*-compliant jury instruction at Applicant's trial was harmful.[2] Accordingly Applicant's death sentence can no longer stand.

## CONCLUSION

---

[2] *Compare Ex parte Hathorn*, 296 S.W.3d 570, 572 ("We acknowledge that normally, an egregious harm standard is proper in analyzing an un-objected-to charge error. However, rather than characterize this [*Penry* claim] as a jury charge error, we interpret the Supreme Court cases related to this particular issue to have broader due process implications."), *with Olivas v. State*, 202 S.W.3d 137, 145 (Tex. Crim. App. 2006) ("The appropriate standard for all errors in the jury charge, statutory or constitutional, is that set out in *Almanza*.") (some punctuation omitted) (referring to *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)).

For the reasons discussed above, we vacate Applicant's death sentence and he is remanded to the custody of Harris County for a new punishment proceeding.

Delivered:  April 14, 2021

Do Not Publish