

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00014-CR

———————————————

JOSE A. SERRANO, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1607141R

---

Before Womack, Wallach, and Walker, JJ.
Opinion by Justice Walker

## OPINION

## I. INTRODUCTION

Jose A. Serrano appeals from his conviction and twenty-five-year sentence for felony evading arrest or detention with a vehicle. *See* Tex. Penal Code Ann. § 38.04(a), (b)(2)(A). He raises three points on appeal: (1) the trial court violated his right to confront witnesses by considering a presentence investigation report (PSI) at punishment; (2) the trial court erred by refusing to include his requested lesser-included-offense instruction in the guilt–innocence charge; and (3) the trial court's finding that he used his vehicle as a deadly weapon is not supported by sufficient evidence. We affirm.

## II. BACKGROUND

Police officers saw Serrano commit a traffic violation after leaving an alleged drug house and driving away in a car. Serrano did not stop after the police turned on their lights and sirens and attempted to pull him over. After an over-six-mile chase on both highways and residential streets, Serrano finally pulled over and police arrested him. As a result, the State charged him with evading arrest, enhanced by a habitual-offender notice and a deadly-weapon allegation. The State later filed a direct reindictment, and after a trial, a jury found him guilty. Serrano elected to have the trial court assess his punishment and requested the preparation of a PSI. After a hearing on punishment, at which the trial court also heard evidence pertinent to the deadly-weapon allegation, the trial court found the habitual-offender paragraph true,

2

found the deadly-weapon allegation true, and assessed Serrano's punishment at twenty-five years' confinement. Serrano has challenged his conviction and sentence on appeal.

## III. CONFRONTATION-CLAUSE COMPLAINT NOT PRESERVED

In his first point, Serrano complains that the trial court violated his Sixth-Amendment right to confront witnesses by considering a PSI at punishment. He candidly admits that the Texas Court of Criminal Appeals has held adversely to him on the merits of this complaint, and he acknowledges that he failed to preserve the complaint. However, Serrano contends that he was not required to preserve the complaint because "the Court of Criminal Appeals has held that under circumstances where the law is well-settled to the point where any objection in the trial court would be futile, the claim will not be considered forfeited for later review." He cites *Ex parte Hathorn*, 296 S.W.3d 570, 572 (Tex. Crim. App. 2009), and *Ex parte Turner*, 542 S.W.2d 187, 189 (Tex. Crim. App. 1976), as support.

But *Hathorn* and *Turner* are both postconviction writ cases in which the Court of Criminal Appeals held that, in that context, preservation at trial was not required to argue for reversal of a conviction based on a higher-court change in the law that occurred after the trial. *Hathorn*, 296 S.W.3d at 571–72; *Turner*, 542 S.W.2d at 189 ("The petitioner's trial was on September 21, 1965, almost two years before the decision in Washington v. Texas, supra. It would be unreasonable to expect the petitioner to anticipate the future decision of the United States Supreme Court.").

3

Not only is this case not in the postconviction-writ posture, Serrano has identified no change in the law since trial of which he now seeks to take advantage. On direct appeal, the Rules of Appellate Procedure and Court of Criminal Appeals case law require that Confrontation-Clause complaints be preserved at trial to be raised on appeal. *See* Tex. R. App. P. 33.1(a)(1); *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010). Because Serrano did not preserve this complaint at trial, we overrule his first point. *See Sells v. State*, 488 S.W.3d 397, 398–99 (Tex. App.—Fort Worth 2016, pet. ref'd).

## IV. FLEEING NOT LESSER-INCLUDED OF EVADING ARREST

In his second point, Serrano argues that the trial court erred by refusing to include his requested instruction to the jury on what he claims is the lesser-included offense of fleeing a police officer. *See* Tex. Transp. Code Ann. § 545.421(a).

### A. STANDARD OF REVIEW

We analyze two steps to determine whether an appellant was entitled to a lesser-included-offense instruction: (1) Are the elements of the lesser-included offense included within the proof necessary to establish the charged offense's elements? (2) Is there evidence in the record from which a jury could find the defendant guilty of only the lesser-included offense? *State v. Meru*, 414 S.W.3d 159, 161 (Tex. Crim. App. 2013); *Hall v. State*, 225 S.W.3d 524, 528, 535–36 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993). But the

4

second step is conditional: we reach it only if we answer the first question affirmatively. *See Meru*, 414 S.W.3d at 162–64.

The first step in the lesser-included-offense analysis is a legal question and so does not depend on the trial evidence. *Hall*, 225 S.W.3d at 535. This step compares the elements of the offense as alleged in the indictment with the elements of the requested lesser offense. *Meru*, 414 S.W.3d at 162. The requested lesser offense must meet the requirements of at least one of the four types of lesser offenses described in Article 37.09 of the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 37.09; *Moore v. State,* 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).

Serrano relies on the lesser-included-offense type described in Code of Criminal Procedure Article 37.09(1). Under Article 37.09(1), an offense is a lesser-included offense of another offense if the indictment for the greater offense either (1) alleges all the lesser-included-offense elements or (2) alleges elements plus facts—including descriptive averments, such as nonstatutory manner and means, that are meant only to provide notice—from which we can deduce all the lesser-included-offense elements. *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g). Therefore, we should compare the greater offense's statutory elements (and any descriptive averments alleged in the indictment) to the lesser offense's statutory elements. *Id.*

5

## B. INDICTMENT AND ELEMENTS OF OFFENSES

Penal Code Section 38.04(a) provides that "[a] person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." Tex. Penal Code Ann. § 38.04(a). The offense is a third-degree felony if "the actor uses a vehicle while . . . in flight." *Id.* § (b)(2)(A); *Adetomiwa v. State*, 421 S.W.3d 922, 927 (Tex. App.—Fort Worth 2014, no pet.). Here, the direct reindictment tracked the statute, alleging that Serrano intentionally fled, using a vehicle, from J. Hinz, knowing Hinz was a peace officer who was attempting to lawfully arrest or detain Serrano.

Similarly, a person commits the offense of fleeing or attempting to elude a police officer "if the person operates a motor vehicle and wilfully fails or refuses to bring the vehicle to a stop or flees, or attempts to elude, a pursuing police vehicle when given a visual or audible signal to bring the vehicle to a stop." Tex. Transp. Code Ann. § 545.421(a). The stop signal "may be by hand, voice, emergency light, or siren"; "[t]he officer giving the signal must be in uniform and prominently display the officer's badge of office"; and "[t]he officer's vehicle must bear the insignia of a law enforcement agency, regardless of whether the vehicle displays an emergency light." *Id.* § 545.421(b).

## C. ANALYSIS

Serrano does not rely strictly on recent applications of the standard of review articulated by the Texas Court of Criminal Appeals; instead, he relies on the analysis

and outcome of this court's 2002 opinion in *Walker v. State*, in which we held—based on a cognate-evidence mode of analysis that the Court of Criminal Appeals has since disavowed—that fleeing in that case was a lesser-included offense of evading arrest or detention because "the only difference between the two statutes *as applied to the facts of th[at] case* [wa]s the element of evading arrest that require[d] appellant's knowledge that the officer was attempting to lawfully arrest or detain him." 95 S.W.3d 516, 519 (Tex. App.—Fort Worth 2002, pet. ref'd). Although Serrano argues that the Texas Court of Criminal Appeals has never expressly overruled *Walker*, that court acknowledged in a footnote in *Farrakhan v. State* that the State had conceded that (a) *Walker* relied on a disavowed cognate-evidence approach and (b) *Hall v. State*, which post-*Walker* clarified the applicable cognate-pleadings standard of review recited in subsection IV.A above,[1] expressly disapproved of cases employing a cognate-evidence mode of analysis. *Farrakhan v. State*, 247 S.W.3d 720, 722 n.6 (Tex. Crim. App. 2008); *Hall*, 225 S.W.3d at 537 (disapproving of "decisions that have held [to] the contrary"

---

[1]In *Hall*, the court described four different approaches to determining whether an offense is a lesser-included offense of another: strict statutory, cognate pleadings, cognate evidence, and inherently related. 225 S.W.3d at 525–26. Under the cognate-pleadings approach, the court looks only to the facts and elements as alleged in the charging instrument rather than to any evidence adduced at trial, as does the cognate-evidence approach. *Id.* After reviewing the different approaches and its prior holdings, the court concluded, "We now hold that the [cognate-]pleadings approach is the sole test for determining in the first step whether a party may be entitled to a lesser-included-offense instruction." *Id.* at 535.

of the cognate-pleadings approach and naming some of those cases)[2]; *see also Oliva v. State*, 548 S.W.3d 518, 520 (Tex. Crim. App. 2018) ("We, of course, are not bound by any agreement or concessions by the parties on an issue of law."). Relying on the clear articulation of the appropriate standard of review in *Hall* and subsequent Court of Criminal Appeals cases reiterating that we are to use a cognate-pleadings analysis instead of a cognate-evidence analysis, we decline to rely on *Walker*'s conclusion based on a now-erroneous analysis.

Using the cognate-pleadings approach, we hold that after comparing the elements and descriptive facts alleged in the indictment to the elements of fleeing, fleeing is not a lesser-included offense of evading arrest; because we so hold, we do not go to the second step and analyze the evidence adduced at trial. *See Farrakhan*, 247 S.W.3d at 723 ("It is only after the alleged lesser offense passes the scrutiny under the first step of the analysis that we then proceed to the second step . . . .").

For the third-degree-felony offense of evading, the State alleged and had to prove that (1) Serrano (2) using a vehicle (3) intentionally (4) fled (5) from a person (6) he knew was a police officer (7) who was lawfully attempting to arrest or detain him. Tex. Penal Code Ann. § 38.04(a). In contrast, the fleeing offense would have required proof that (1) Serrano (2) operated a motor vehicle (3) and wilfully (4) either

---

[2]That *Hall* expressly named some of these cases but not others, including *Walker*, does not mean that the Court of Criminal Appeals left *Walker*'s flawed analysis intact.

(a) failed or refused to bring that vehicle to a stop, or (b) fled, or attempted to elude, a pursuing police vehicle bearing the insignia of a law enforcement agency, (5) after being given a visual or audible signal to stop the vehicle (6) by either hand, voice, emergency light, or siren (7) by an officer in uniform (8) with a prominently displayed badge. Tex. Transp. Code Ann. § 545.421(a), (b).

As other courts of appeals have noted, when we employ the proper cognate-pleadings test, we see that the State has to prove additional facts for fleeing that it does not have to prove to show evading: that the police officer was in a vehicle, or if the officer was driving a vehicle, that it was marked with law enforcement insignia; that the officer was in uniform and wearing a badge; and that the officer gave a visual or audible signal to stop. *See, e.g.*, *Peavey v. State*, 248 S.W.3d 455, 468–69 (Tex. App.—Austin 2008, pet. ref'd); *Horne v. State*, 228 S.W.3d 442, 446–49 (Tex. App.—Texarkana 2007, no pet.); *Farrakhan v. State*, 263 S.W.3d 124, 136–40, 143–44 (Tex. App.—Houston [1st Dist.] 2007),[3] *aff'd*, 247 S.W.3d at 724; *see also Keller v. State*,

---

[3]The court of appeals in *Farrakhan* distinguished *Walker*: "That the State could and did present evidence of these four additional facts in proving appellant's guilt of the charged offense does not mean that the State was required to do so. It is only the latter inquiry that determines whether an offense constitutes a lesser-included offense of the charged offense." 263 S.W.3d at 139; *see McKithan v. State*, 324 S.W.3d 582, 592–94 (Tex. Crim. App. 2010) (analyzing *Farrakhan* and *Hall*, discussing how *Walker*'s analysis differed from the court of appeals's in *Farrakhan*, and concluding that for cognate-pleadings analysis, "[t]he relevant inquiry is not what the evidence may show but what the State is required to prove to establish the charged offense"; thus, an offense may not be a lesser included offense even if the State proved all of its elements in trying the charged offense).

No. 09-19-00204-CR, 2021 WL 2345547, at *2–3 (Tex. App.—Beaumont June 9, 2021, pet. ref'd) (mem. op., not designated for publication); *Adams v. State*, No. 13-09-00334-CR, 2010 WL 2783745, at *9 (Tex. App.—Corpus Christi–Edinburg July 15, 2010, pet. ref'd) (mem. op., not designated for publication). Because fleeing requires proof of elements that evading does not, fleeing is not a lesser-included offense of evading. *Peavey*, 248 S.W.3d at 469; *Farrakhan*, 263 S.W.3d at 139, 143–44. Therefore, the trial court did not err by refusing to include Serrano's requested fleeing instruction in the charge. *See Peavey*, 248 S.W.3d at 469; *cf.* Tex. Code Crim. Proc. Ann. art. 36.14 (requiring trial judge to instruct jury only on "law applicable to the case"). We overrule Serrano's second point.

## V. DEADLY-WEAPON FINDING SUPPORTED BY EVIDENCE

In his third point, Serrano complains that the evidence does not support the trial court's deadly-weapon finding.

### A. APPLICABLE LAW AND STANDARD OF REVIEW

By statute, a motor vehicle is not a deadly weapon per se, but it can be a deadly weapon if its "manner of . . . use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(17)(B); *Couthren v. State*, 571 S.W.3d 786, 789 (Tex. Crim. App. 2019). "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code Ann. § 1.07(46). A vehicle is not capable of causing

death or serious bodily injury unless its manner of use presents an "actual danger" of causing such harm. *Drichas v. State*, 175 S.W.3d 795, 799–800 (Tex. Crim. App. 2005).

To determine if the evidence shows sufficiently whether a vehicle was used as a deadly weapon, we use a two-part test: "first, we evaluate the manner in which the defendant used the motor vehicle during the felony; and second, we consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009). The evading-arrest statute "does not require pursuing police officers or other motorists to be in a zone of danger, take evasive action, or require [the] appellant to intentionally strike another vehicle to justify a deadly weapon finding." *Drichas*, 175 S.W.3d at 799.

## B. APPLICABLE FACTS

According to the parties' agreement, the trial judge considered the deadly-weapon allegation at punishment. This phase occurred over two days, with a little over two months in between, because Serrano requested that a PSI be prepared. On the second day of punishment, the trial court admitted the PSI, and the State re-offered "everything that [was] already in evidence" from guilt–innocence and the first day of punishment; the trial court "[g]ranted" the re-offer.[4]

---

[4]A visiting judge presided over guilt–innocence, and the presiding trial judge, at Serrano's election, decided Serrano's punishment, including making a finding on the habitual-offender-enhancement allegation in addition to the deadly-weapon allegation. The presiding judge said he intended to review the reporter's record from guilt–innocence; he also said that he had watched the admitted video recording of the chase and stop. Serrano does not complain that the trial judge did not review the reporter's

At guilt–innocence, Fort Worth Police Officer Jacob Hinz testified that on March 31, 2014, he and his partner Tyler Rawdon were investigating a narcotics complaint near 1000 East Arlington in Fort Worth; Rawdon was driving while Hinz was working the radio and computer. As they drove by a quadplex where heroin was allegedly being sold, they noticed Serrano "walking from the rear of the location towards the vehicle parked on the street." When Serrano saw the police car, he "knelt down near his car as if he was checking on it, checking on a tire, or checking on a bumper making sure the vehicle was okay." Serrano stayed that way for a couple of minutes.

After about two to three minutes, Serrano got into the car. The officers turned around and drove up behind him with the police car's lights off. They saw Serrano pull away from the curb without signaling and run a stop sign.

After Serrano pulled away from the curb, the officers turned on the police car's headlights and began to follow him. Their overhead lights were not on at the time. After turning, Serrano began speeding, and the officers could not keep up with him. They eventually found Serrano on another street and began following him. Serrano was driving "at a high rate of speed"; he was going so fast they had a hard time keeping up with him again. Rawdon and Hinz advised other officers by radio that Serrano was driving recklessly; eventually, another officer spotted Serrano's car and

record from guilt–innocence, nor does he challenge the trial judge's ruling granting the State's re-offer of the guilt–innocence evidence.

12

followed it until Rawdon and Hinz could catch up. After driving a couple of miles, they caught up with Serrano on I-30.

After catching up with Serrano, Rawdon activated his body camera, and the officers turned on the police car's lights and sirens. But Serrano did not stop. According to Hinz, there "were a few" cars on the highway, and Serrano was putting them in danger because of his "high rate of speed." According to Hinz, Serrano was driving "[r]ecklessly": "[a]t one point, he went into the oncoming lanes of traffic and just the high rate of speed through neighborhoods."

Hinz described Serrano's driving, agreeing that he was weaving in and out of light to moderate traffic. When Serrano was driving through a residential neighborhood, at a speed "[p]robably in the 60s," Hinz noticed at least one pedestrian "on the left side." Hinz testified that based on his training and experience, at the speed he was driving, Serrano could have endangered the life of the pedestrian he passed as well as the lives of other drivers. According to Hinz, during the chase the officers saw Serrano run a red light and stop sign and fail to use a signal to take right turns. Serrano eventually stopped his car, and the officers were able to arrest him.

On cross-examination, Hinz admitted that Rawdon drove by the pedestrian at the same speed and "essentially" via the same path as Serrano; according to Hinz, he "didn't do anything to place that pedestrian in danger." On redirect, the prosecutor was able to elicit that one difference between Serrano's driving and Rawdon's driving

13

was that Rawdon's car had a siren and lights activated while Serrano's had only headlights to warn the pedestrian.

Importantly, as did the trial court, we have watched the video of the chase. The video shows Serrano running a red light on the service road after exiting the interstate; turning right without stopping at a second red light, from the middle lane, around a slowed or stopped car in the right lane; driving at a high speed down a two-lane curving road without a shoulder, past a fair amount of oncoming traffic and past one car pulled over to the right in the same lane; and driving down several residential streets lined with parked cars, at one point passing close by a parked car, with its headlights on, and a pedestrian on the sidewalk next to the car.

## C. ANALYSIS

Serrano's argument relies exclusively on his account of the bodycam video showing the officers' chase; he contends that it shows that he was speeding only occasionally; that although he ran a red light, he slowed down first, and there was "absolutely no traffic present except for a vehicle in the right lane[,] which . . . Serrano slowed to go around, and the police cars tailing him"; that although he drove through a residential area "without coming to a complete stop at the stop sign before making a right turn" and speeding, there was "no moving vehicular traffic appearing on the video" in that residential area; and that although he crossed a yellow line on the

14

highway, there was not oncoming traffic at that time. Thus, Serrano appears to challenge only the "actual danger," second part of the two-step test.[5]

Serrano invites us to elevate what facts were not in evidence over those facts that were in evidence and the reasonable inferences from those facts that a factfinder could make. *See Moore v. State*, 520 S.W.3d 906, 912 (Tex. Crim. App. 2017). The video shows cars having to slow down and, in some cases, stop to avoid Serrano and the officers; this includes a specific time that Serrano turned right, without stopping at a stop sign, from the middle lane directly in front of a car in the right lane. The video also shows Serrano driving at a high speed down residential streets lined with parked cars on either side; at least one of those streets was so congested with parked cars that only one lane of traffic could get through. Serrano ran a red light exiting the highway, as well as several stop signs in residential neighborhoods. Stopped cars can be seen about to enter the larger roadways where Serrano was driving, and numerous cars were driving in the oncoming lane while Serrano was driving at high speed on a curving road. Finally, Serrano alternated between bursts of speed and hitting his brakes, causing the officers following him to do the same. *See Drichas*, 175 S.W.3d at 798.

---

[5]Nevertheless, Serrano's driving as depicted on the video—especially his driving at a high speed down a two-lane residential street lined on both sides with parked cars so that only one moving car could get through—was reckless. *See Drichas*, 175 S.W.3d at 797–98; *see also, e.g.*, *Shaw v. State*, No. 06-05-00238-CR, 2006 WL 3024975, at *1 (Tex. App.—Texarkana Oct. 20, 2006, pet. ref'd) (mem. op., not designated for publication).

15

As did the appellant in *Hazlewood v. State*, Serrano relies on three distinguishable intermediate appellate court opinions to support his argument; they do not affect our conclusion. No. 02-18-00372-CR, 2019 WL 2635567, at *2 (Tex. App.—Fort Worth June 27, 2019, pet. ref'd) (mem. op., not designated for publication). The appellant in *Glover* had been driving while intoxicated and speeding, but the record did "not contain any other evidence that [he] was driving recklessly." *Glover v. State*, No. 09-13-00084-CR, 2014 WL 1285134, at *2 (Tex. App.—Beaumont Mar. 26, 2014, pet. ref'd) (mem. op., not designated for publication). In *Foley*, the appellant crashed his truck while driving intoxicated, but the evidence showed that the closest person nearby was working in an office building sixty feet away. *Foley v. State*, 327 S.W.3d 907, 910, 917 (Tex. App.—Corpus Christi–Edinburg 2010, pet. ref'd) ("[T]here is no evidence in the record before us that there were other persons or vehicles at the same 'time and place' as Foley. No one other than Foley himself 'was placed in danger of serious bodily injury or death.'" (citations omitted)). And in *Pointe v. State*, officers responded to a two-car collision and determined that a driver had pulled out in front of Pointe's car and was at fault. 371 S.W.3d 527, 530, 532 (Tex. App.—Beaumont 2012, no pet.). Although the investigating officer thought Pointe might be intoxicated after speaking to him and noticing beer bottles in the car, and after Pointe showed signs of intoxication on some of the standard field-sobriety tests, the record contained no inferences that Pointe had engaged in any reckless or dangerous driving before or as a

cause of the accident. *Id.* at 530, 532. Because these cases are factually distinguishable, we do not consider them persuasive in this specific matter.

The video depicting Serrano's driving provided ample evidence to support the trial court's findings that he drove recklessly, dangerously, or both, and that his driving put others in actual danger of serious bodily injury or death. Thus, the evidence is sufficient to support the trial court's deadly-weapon finding. We overrule Serrano's third point.

## VI. CONCLUSION

Having overruled Serrano's three points, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Publish

Delivered: November 18, 2021