

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00067-CR

_____

KEITH ANTHONY HUBBARD, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from 371st District Court
Tarrant County, Texas
Trial Court No. 1580228D

---

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Keith Anthony Hubbard appeals his convictions for continuous sexual assault of a young child, indecency with a child by contact, and two counts of indecency with a child by exposure. *See* Tex. Penal Code Ann. §§ 21.02(b), 21.11(a)(1)–(2). On appeal, Hubbard argues in two points that (1) the trial court's consideration of the presentence investigation report (PSI) at punishment violated his rights under the Sixth Amendment's Confrontation Clause, *see* U.S. Const. amend. VI, and (2) the trial court abused its discretion by admitting over Hubbard's Rule 403 objection a forensic examiner's testimony concerning the names of certain pornographic websites that had been visited from Hubbard's cell phone, *see* Tex. R. Evid. 403. We will affirm.

## II. BACKGROUND

In October 2018, Arlington police officer Trenton Fite and his patrol partner were dispatched to an Arlington residence in response to a 911 call reporting a runaway child. Upon arrival, he spoke with Shaundreika Washington, who informed him that her then-fifteen-year-old daughter J.R.[1]—Hubbard's stepdaughter—had run away from home. Washington indicated that she had been communicating with J.R. via text throughout the day.

---

[1]We use initials to refer to the victim. *See* Tex. R. App. P. 9.10(a)(3).

2

Officer Fite testified that the nature of his investigation changed when Washington showed him a short video clip that J.R. had texted her. The video, which J.R. had recorded on her cell phone, showed Hubbard masturbating in front of J.R. while standing in a hallway.

After viewing the video, Officer Fite went to a nearby Chicken Express to meet with J.R. She told him that she did not want to return home until her stepfather was gone. She then "opened up" about Hubbard's sexual abuse and showed Officer Fite the same video that he had seen on Washington's phone. Officer Fite learned that J.R. had made previous outcries to her mother about Hubbard's sexual abuse but that the police had not been notified. Pursuant to police-department protocol, he notified the Crimes Against Children Unit and Child Protective Services of J.R.'s allegations, triggering an investigation.

Ultimately, Hubbard was indicted for fourteen offenses: continuous sexual assault of a young child, three counts of aggravated sexual assault of a child, six counts of indecency with a child by contact, and four counts of indecency with a child by exposure. *See* Tex. Penal Code Ann. §§ 21.02(b), 21.11(a)(1)–(2), 22.021(a)(1)(B). Hubbard pleaded not guilty, and a jury trial was held.[2]

At trial, the State called seven witnesses, including J.R., who described in detail the many forms of sexual misconduct that Hubbard had committed against her. She

---

[2]Although Hubbard's guilt was decided by a jury, he elected to have the trial court decide his punishment.

testified that the abuse began when she was six or seven years old and in the first grade. Hubbard began by masturbating in front of her and later progressed to taking her clothes off after she went to bed, touching her breasts, putting his mouth on her vagina, touching her mouth with his penis, and rubbing his semen on her lips. The abuse occurred "all the time . . . for many, many months over many grades." During J.R.'s testimony, the State introduced a number of exhibits detailing the dates and forms of Hubbard's sexual abuse, including the video that J.R. and her mother had shown to Officer Fite.

The State also called Vy Phan, a digital forensic examiner for the Arlington Police Department, to testify regarding certain data that he had extracted from Hubbard's cell phone. Specifically, Phan testified as to the domain names of certain pornographic websites—all of which suggested that they contained content relating to incest or the sexual exploitation of children—that had been visited from Hubbard's phone.[3]

The jury convicted Hubbard of continuous sexual assault of a child (Count One), indecency with a child by contact (Count Nine), and two counts of indecency with a child by exposure (Counts Eleven and Thirteen).[4] Because Hubbard had

---

[3]Phan extracted image files from Hubbard's phone that had been downloaded from each of the listed websites, but he did not describe the images, nor were they shown to the jury.

[4]The State waived Counts Seven, Ten, Twelve, and Fourteen at the close of testimony during the guilt–innocence phase of trial. In addition, the trial court's

elected to be sentenced by the trial court and had requested the preparation of a PSI, the proceedings were continued pending a presentence investigation. Ultimately, following a sentencing hearing, the trial court sentenced Hubbard to life on Count One, to twenty years' incarceration on Count Nine, and to ten years' incarceration on Counts Eleven and Thirteen.[5] This appeal followed.

## III. DISCUSSION

## A. Hubbard Failed to Preserve His Meritless Confrontation-Clause Complaint

In his first point, Hubbard contends that the trial court violated his Sixth-Amendment right to confront witnesses by considering the PSI at punishment. *See* U.S. Const. amend. VI. He candidly admits that the Texas Court of Criminal Appeals has held adversely to him on the merits of this complaint,[6] and he also acknowledges that he failed to preserve the complaint by objecting at trial. Indeed, far from objecting, Hubbard specifically *requested* that the trial court consider the PSI during sentencing. However, citing *Ex parte Hathorn*, 296 S.W.3d 570, 572 (Tex. Crim. App. 2009), and *Ex parte Turner*, 542 S.W.2d 187, 189 (Tex. Crim. App. 1976), he contends

---

charge instructed the jury not to consider Counts Two, Three, Four, Five, Six, or Eight if it found Hubbard guilty of Count One. Thus, Counts One, Nine, Eleven, and Thirteen were the only counts considered by the jury.

[5]These sentences are to run concurrently.

[6]*See Stringer v. State*, 309 S.W.3d 42, 48 (Tex. Crim. App. 2010) ("When the sentence is determined by the judge, the information in a PSI is not subject to the Confrontation Clause.").

that he was not required to preserve his Confrontation-Clause complaint because "the Court of Criminal Appeals has held that under circumstances where the law is well-settled to the point where any objection in the trial court would be futile, the claim will not be considered forfeited for later review."

But *Hathorn* and *Turner* are both postconviction writ cases in which the Court of Criminal Appeals held that, in that context, preservation at trial was not required to argue for reversal of a conviction based on a higher-court change in the law that occurred after the trial. *Hathorn*, 296 S.W.3d at 571–72; *Turner*, 542 S.W.2d at 189 ("The petitioner's trial was on September 21, 1965, almost two years before the decision in *Washington v. Texas*, *supra*. It would be unreasonable to expect the petitioner to anticipate the future decision of the United States Supreme Court."). This case is not in a postconviction-writ posture, nor has Hubbard identified any change in the law since trial of which he now seeks to take advantage. On direct appeal, the Rules of Appellate Procedure and Court of Criminal Appeals case law require Confrontation-Clause complaints to be preserved at trial. *See* Tex. R. App. P. 33.1(a)(1); *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010). Because Hubbard did not preserve this complaint at trial, we overrule his first point. *See Davis*, 313 S.W.3d at 347; *Serrano v. State*, 636 S.W.3d 717, 720–21 (Tex. App.—Fort Worth 2021, pet. ref'd); *Sell v. State*, 488 S.W.3d 397, 398–99 (Tex. App.—Fort Worth 2016, pet. ref'd).

6

## B. Hubbard's Rule 403 Complaint Lacks Merit

In his second point, Hubbard contends that the trial court abused its discretion by overruling Hubbard's Rule 403 objection to Phan's testimony concerning the names of four pornographic websites that had been visited from Hubbard's cell phone. We disagree.

### 1. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.* If the trial court's evidentiary ruling is correct on any applicable theory of law, we will not disturb it even if the trial court gave the wrong reason for its correct ruling. *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Qualls v. State*, 547 S.W.3d 663, 675 (Tex. App.—Fort Worth 2018, pet. ref'd).

### 2. Rule 403

Even if evidence is relevant, it can still be excluded under Rule 403 if the danger of unfair prejudice substantially outweighs the evidence's probative value. *McNeil v. State*, 398 S.W.3d 747, 756 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd);

7

*see also* Tex. R. Evid. 403. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial." *James v. State*, 623 S.W.3d 533, 546–47 (Tex. App.—Fort Worth 2021, no pet.) (first citing *Montgomery*, 810 S.W.2d at 389; and then citing *Emich v. State*, No. 02-18-00059-CR, 2019 WL 311153, at *7 (Tex. App.—Fort Worth Jan. 24, 2019, no pet.) (mem. op., not designated for publication)). Because of this presumption, it is the burden of the party opposing the admission of the evidence to show that the evidence's probative value is substantially outweighed by one or more of the dangers listed in Rule 403— including unfair prejudice. *James*, 623 S.W.3d at 547; *Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd); *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd).

To determine whether evidence is admissible in the face of a Rule 403 objection, the trial court must conduct a balancing test. *Montgomery*, 810 S.W.2d at 389; *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). The Texas Court of Criminal Appeals has instructed that when undertaking a Rule 403 analysis, courts must balance (1) the inherent probative force of the proffered item of evidence and (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that presentation of the evidence will

consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641–42.

### 3. Application

Hubbard contends that Phan's testimony concerning the names of the four pornographic websites visited from Hubbard's phone had minimal probative value because this evidence was "utterly irrelevant to any fact of consequence."[7] However, evidence of a defendant's use of pornography is admissible when—as here—there is a clear nexus between the pornography and the offense. *See, e.g.*, *Sarabia v. State*, 227 S.W.3d 320, 324 (Tex. App.—Fort Worth 2007, pet. ref'd) (concluding that photographs found in defendant's computer depicting sexual acts involving underage boys were admissible as evidence of intent to arouse or gratify sexual desire in prosecution for aggravated sexual assault of a preteen boy); *Darby v. State*, 922 S.W.2d 614, 620 (Tex. App.—Fort Worth 1996, pet. ref'd) (holding that there was no error in the trial court's admission of a magazine depicting sexually explicit photographs of young female posing with teddy bear when defendant was accused of fondling underage victim while taking her picture posed with a teddy bear). Evidence that Hubbard visited pornographic websites with domain names suggesting that they contained content relating to incest or the sexual exploitation of children is highly

---

[7]We note that this contention is in direct conflict with the position taken by Hubbard's trial counsel, who conceded on the record that the names of the pornographic websites were "probably relevant."

probative of his intent to arouse or gratify his sexual desire by sexually abusing his stepdaughter J.R.

Hubbard has failed to show that the evidence's high probative value was substantially outweighed by any of the dangers listed in Rule 403. *See James*, 623 S.W.3d at 547; *Wells*, 558 S.W.3d at 669; *Sanders*, 255 S.W.3d at 760. No images were presented to the jury—only the website addresses. Given that the State presented other more substantial and graphic evidence, including J.R.'s testimony detailing Hubbard's years-long sexual abuse and the video J.R. recorded of Hubbard masturbating in front of her, we are unpersuaded that hearing the names of the pornographic websites had a strong effect on the jury, much less caused it to decide the case on an improper basis. *See Foster v. State*, No. 05-14-01186-CR, 2015 WL 8039901, at *4 (Tex. App.—Dallas Dec. 7, 2015, no pet.) (mem. op., not designated for publication); *see also Gigliobianco*, 210 S.W.3d at 641 (clarifying that unfair prejudice "refers to a tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one"). Further, because the evidence was not scientific or technical in nature, there was little risk of jury confusion. *See Gigliobianco*, 210 S.W.3d at 641 (providing scientific evidence as an example of the type of evidence that "might mislead a jury that is not properly equipped to judge" its "probative force"). Moreover, the presentation of the evidence consumed relatively little time,[8]

---

[8]To support his argument that "the State consumed an inordinate amount of the trial court's time" to present the website names, Hubbard points to the fact that

10

and the State only mentioned the list of the websites once during final argument. *See Foster*, 2015 WL 8039901, at \*4 (holding that appellant had failed to show that a report reflecting that he had "searched for and observed child pornography" was unfairly prejudicial under Rule 403 in part because "the topic [had not been] heavily developed during the trial").

Thus, we cannot conclude that any tendency of Phan's testimony about the pornographic websites to confuse or distract the jury from the main issues in the case substantially outweighed its probative value, *see Gigliobianco*, 210 S.W.3d at 642, much less that the trial court's decision to admit this evidence was outside the zone of reasonable disagreement, *see Zuliani*, 97 S.W.3d at 595. Further, because we conclude that the evidence was not unduly prejudicial, we also agree with the State that any error in admitting it was harmless. *See* Tex. R. App. P. 44.2(b); *Foster*, 2015 WL 8039901, at \*4.

---

the presentation of this evidence made up "a substantial portion of [Phan's] trial testimony." However, Hubbard fails to point out that Phan's entire testimony only lasted approximately thirty minutes. Thus, even taking into account the roughly ten- to fifteen-minute hearing that the trial court held outside the jury's presence to consider the admissibility of Phan's testimony, the presentation of the website names consumed no more than forty to forty-five minutes of a trial in which the guilt–innocence phase spanned three calendar days and included eight total witnesses. This amount of time is far from "inordinate." *Cf. Ibenyenwa v. State*, 367 S.W.3d 420, 426 (Tex. App.—Fort Worth 2012, pet. ref'd) (holding that the trial court had not abused its discretion by overruling appellant's Rule 403 objection to the admission of a recorded interview of the child complainant in his trial for sex-related offenses in part because the recording "was only about forty minutes long" and thus "there was little danger of it['s] taking an undue amount of time from the remainder of the trial").

We overrule Hubbard's second point.

## IV. CONCLUSION

Having overruled both of Hubbard's points, we affirm the trial court's judgments.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 9, 2023